(Court of Appeal, Parish of Orleans.)

JOS. LAUGHLIN Appellant, vs. ISAAC SONTHEIMER, DR. W. G. ARMSTRONG, Called in Warranty, Appellees.

1. The recission of the sale of a horse will not be decreed where the conjectural and conflicting opinions of experts (veterinary surgeons) leave doubtful the fact of the existence of the vice before, at the time and within the three days following the sale, R. C. C. 2530. 5 A. 592. 708. 16 A. 107. 16 La. 340.

2. Especially so where the purchaser has had for several days full possession and control of the animal, has, during that time, made a test of him without detecting any vice and has, at the end of the time, made of him excessive use.

3. A plaintiff should make his case certain; to make it only probable is not enough to recover.

Appeal from the Civil District Court, Division A.

Stafford & Lambert, for Plaintiff and Appellant.

H. L. Lazarus, for Defendant.

W. W. Wall, for Warrantor.

BEAUREGARD, J. On January 10th, 1902, Dr. W. G. Armstrong, the owner of a bay mare, sold her to the defendant for $100.

On January 25th or 30th, 1902, the latter sold her for $125 to Joseph Laughlin. On February 7th, 1902, showing unmistakable signs of sickness, she was sent by him to the veterinary hospital stalls of the Drs. Ford for treatment.

Advised by them that the mare was suffering from an incurable disease; osteo porosis or big head, i. e. a porous condition of the bones which rendered them brittle and could or might affect the head by the enlargement of the bones, the mare was tendered back by the plaintiff herein to the defendant with request to reimburse the purchase price. This being refused, the mare, on the 14th of February, was brought back to Laughlin's premises, where she finally died on October 4, 1902.

But this suit was filed by him on February 18th, 1902, for a recission of the sale, owing to the diseased condition of the mare as being a redhibitory vice existing prior to its purchase; for a return of the

purchase price; the expenses incurred in the treatment of the animal up to the time she died, and the attorneys fees, claimed to be due as damages.

The defense, besides the general issue tendered, averred defendant's purchase of the mare on Dr. Armstrong's representations that " she was sound and free from any vice " and that she was likewise sold by the defendant under these representations, in good faith and in ignorance of her being affected by any redhibitary vices. And he calls Dr. Armstrong in warranty.

The latter's exception to defendant's right to this call; furthermore that it was prescribed dating to its service, March 11th, 1902, from the time of sale; and the further averment that said sale was of an animal sound and free of any apparent defect, was referred to the merits.

And the trial, followed by an attempt at new trial, which was refused, on the ground of an averment of cumulative evidence only, and which the record reveals to this Court to be correct, resulting in a decree rejecting plaintiff's demand, he appeals.

The gist of the written opinion of the court a qua, upon which its judgment rests, is that the ill or excessive use of the animal in question was the prime cause of the development of its disease. And the inference is that the evidence adduced at the trial was insufficient to show, within the Court's appreciation, that the mare's sickness exist-ed prior to or at the time of the sale; or within the time whch raises the presumption that it did so exist. R. C. C. 2530. 16 La. 340.

A most careful examination of the evidence of record was made. That evidence consists in the opinion of several veterinary surgeons as to the disease termed " big head " or osteo prosis; decay of the bones which, they nearly all attribute to a lack of lime in the system. That this disease is constitutional and not contagious. Some of these surgeons say that it may have existed from one month to six weeks before development, which may be sudden by use of the animal; that it may be in process of development for from 2 to 4 years, and suddenly develop in the hands of a fourth purchaser. But they are all unable or unwilling to state when the infection begins and when the first symptoms of the disease manifest themselves.

Plaintiff's witnesses are positive that the mare was affected with big head; defendant's are of an adverse opinion; one being silent as to the nature of the sickness; the other affirming that when seen by him, she was suffering from acute founder. But no one of these witnesses assert with positiveness that this mare was affected prior to or at the time of the sale; nor that her sickness or disease could not have begun whilst in the possession of the last purchaser.

Dr. Ford, (plaintiff's witness), was asked : "Could that condition

exist ten days, within ten days?" A. "I hardly think so." Q. "Well could it, as a fact?" A. "There are no facts in disease; I am merely giving my opinion of it."

From the foregoing, it is apparent that there is a conflict in the opinion of these witnesses, and the mind cannot with certainty reach the conclusion that the disease of the mare existed prior to, at the time of the sale and, whilst in the hands of the last purchaser, whether it was not due to some cause to which he, himself, did not give rise.

In 5 A. 708 Roca vs. Slawson, the Court laid down as a principle the following: "the c .njecural opinion of witnesses, unsupported by any other evidence, (did) does not carry conviction to the mind, and (could) connot be received as full proof of any fact. "And this principle was applied to the opinions of physicians founded (even) on post mortem examinations, and intended to show the time at which the disease commenced. See also 3 A. 44, 16 A. 107.

It will be noted from the record that when the mare died, not even a post mortem examination of her was made. And the opinions given by all of these surgeons, however worthy of respect, were but speculative and did not prove a fact.

Turning now to the other portion of the evidence which related to the sale by Dr. Armstrong to the defendant and by the latter to the plainitff, the good faith of the parties is apparent.

When Dr. Armstrong sold the mare in question, the purchaser was allowed if he choose, to take her on trial; but the latter after verifying that she had once suffered from founder, of which she had ben cured, still adhered to his purchase. After his use of same for nearly 20 days he sold her to the plaintiff for $125, receiving $50 cash the rest in a note of $93, i. e., $75, balance of price for the mare, and $18, to cover a former indebtedness, of plaintiff to the vendor. And the former drove her in his buggy for nearly 5 or 6 days without detecting any defect in her. It was then, when after a return from a funeral load, she was sent out again for the same purpose, that she gave proof the next day of these signs of distress which were the cause of her being sent to the Ford's stables for treatment. 16 La. 336.

What took place during the time she was driven to, then in, the second funeral does not appear of record.

Whether the mare fell, whether she was injured, and injured seriously during this service is not of record. The driver was not placed on the stand and was not subject to cross examination. There is a hiatus which suggests a doubt, which doubt must be resolved in favor of the defendant, even including the ground upon which the judgment of the lower court rests.

With respect to the party called in warranty, legally the decree

of the Court must, being in favor of the defendant, free him from responsibility; but it must also be noted that the party thus called was a stranger to the sale made by defendant to the plaintiff. There was not privity of contract between him and these parties. His representations of the soundness of the mare to his vendee, at the time of the sale, cannot be viewed in the light of a continuing guarantee with respect to movables from vendee to vendee.

35 A. 618 Louque's D. p. 549. 2.

We are of the opinion that the judgment of the lower Court should not be disturbed, and it is therefore affirmed.

MOORE, J. Not having heard this case takes no part.

October 13th, 1903.

————o————

N o. 3256.

(Court of Appeal, Parish of Orleans.)