RAMSON ABBOTT and others, in equity, *vs.* JAMES M. TREAT.

Waldo.    Opinion February 2, 1886.

*Waters.    Shore.    Equity,    Deed.    Bond.    Fraudulent representations.*

The shore adjoining tide waters, not exceeding one hundred rods in width, belongs to the owner in fee of the uplands adjoining when bounded by such waters; but it may be severed by the owner, and he may sell either or both.

The plaintiff conveyed by warranty deed to the defendant a parcel of land bordering upon Penobscot Bay, the southerly boundary of which, as stated in the deed, was "to a stake and stones on the shore of Penobscot Bay, thence southwesterly by said shore to the extremity of Squam Point, so called," etc. A third party had a right of fishery, by prior deed, in the waters on that side of defendant's land, with all privileges necessary for carrying on the same, and which was not mentioned in the deed from the plaintiff to the defendant. An action of trespass had been brought by such third party against the defendant and judgment recovered, but damages had not been assessed or execution issued. The defendant represented to the plaintiff that by reason of the covenants contained in his deed, the plaintiff was liable to pay whatever judgment and costs should be recovered against the defendant in the trespass suit, and the plaintiff thereupon executed a bond to the defendant for the payment of the same. Upon a bill in equity brought to cancel said bond, *Held :* That such representations would not warrant a court of equity in cancelling said bond.

It is a rule applicable alike in courts of equity as well as in courts of law, that fraud is not to be presumed, but must be established by proof.

A representation of what the law will or will not permit to be done, will not ordinarily amount to such fraud as a court of equity will take cognizance of, but is to be regarded rather as the expression of an opinion than the assertion of a fact.

ON REPORT.

Bill in equity brought to cancel a certain bond given by the plaintiffs to the defendant, March 5, 1884.

The opinion states the essential facts. The action of trespass referred to in the opinion was before the law court and was reported in 75 Maine, 594 (*Matthews* v. *Treat*).

*Joseph Williamson*, for the plaintiffs.

When the bond was given Treat could not have maintained an action against Abbott for breach of warranty because he had not then been damnified. *Wheeler* v. *Sohier*, 3 Cush. 224; *Emer-*

*son* v. *Minot*, 1 Mass. 464 ; *Montgomery* v. *Reed*, 69 Maine. 515.

Then again the essence of Matthews' action against Treat was an invasion of the right of the former to take fish. Abbott's deed bounds the land conveyed to the defendant " by the shore." That " the shore " of waters where the tide ebbs and flows, means the ground between high and low water mark, and that the word " by " when used in bounding land is a word of exclusion has been long settled. *Storer* v. *Freeman*, 6 Mass. 435 ; *Niles* v. *Patch*, 13 Gray, 254 ; *Nickerson* v. *Crawford*, 16 Maine, 245 ; *Montgomery* v. *Reed*, 69 Maine, 510.

Abbott was never notified of, or vouched in to defend the Matthews' suit. The right to an action against the covenantor has never been recognized without such notice until after judgment on eviction. *Ryerson* v. *Chapman*, 66 Maine, 557.

The representations were false and fraudulent. Any act falsely intended to induce a party to believe in the existence of some other material fact, and having the effect of producing such belief, to his injury, is a fraud. *Trambly* v. *Ricard*, 130 Mass. 259.

And the bond being without consideration and given solely on account of the fraudulent representations of the defendant, the plaintiff is entitled to the remedy asked for. *Somes* v. *Brewer*, 2 Pick. 184 ; *Kellogg* v. *Curtis*; 65 Maine, 59 ; *Fuller* v. *Percival*, 126 Mass. 381 ; *Commercial Ins. Co.* v. *McLoon*, 14 Allen, 351 ; *Martin*, v. *Graves* 5 Allen. 601 ; *Hulsman* v. *Whitman*, 109 Mass. 411.

*Thompson and Dunton*, for the defendant.

FOSTER, J. It is unnecessary in this case to consider how far equity extends its jurisdiction for the cancellation of written instruments obtained by fraud. From a very careful examination of the evidence we are satisfied that there was no such fraud as would justify the intervention of a court of equity, and for that reason the bill cannot be sustained. Divested of all legal verbiage, the bill alleges that the defendant falsely and knowingly represented to the plaintiff that he, the plaintiff, was liable upon his covenants in a certain deed, given by the plaintiff

to the defendant, to pay whatever judgment and costs one James D. Mathews had recovered or might recover in an action of trespass against this defendant.

The prime cause of these representations, without going into unnecessary detail, was this: The plaintiff had conveyed by warranty deed to the defendant a parcel of land bordering upon Penobscot Bay, the southerly boundary of which, as stated in the deed, was " to a stake and stones on the shore of Penobscot Bay, thence south-westerly by said shore to the extremity of Squam Point, so called," etc. James D. Mathews, as it appears, had a right of fishery, by prior deed, in the waters on that side of the defendant's land with all the privileges necessary for carrying on the same, and which was not mentioned in the deed from the plaintiff to the defendant. An action of trespass had been brought by said Mathews against the defendant and judgment recovered, but damages had not been assessed or execution issued at the time of the alleged representations. The defendant then claimed, and as appears from the answer to this bill, as well as by the evidence in this case, now claims, that his deed from the plaintiff covered the shore or flats in front of his main land; and that at the time of the conveyance to him the premises were encumbered with the right of fishery as before stated. The plaintiff, on the other hand, now claims that his deed only extended to the shore, and did not embrace within its boundaries that portion claimed by the defendant between high and low water mark.

While it may be admitted that the question now before this court is not where, on the south or in front of this land, the true boundary line is, yet in one sense it has a legitimate as well as important bearing on the question at issue in throwing some light upon the character of the alleged representations. From the evidence it is impossible to determine correctly whether the plaintiff's deed extends below high water mark or not. The language is " to a stake and stones on the shore." " The shore is the ground between ordinary high and low water mark — the flats." *Montgomery* v. *Reed*, 69 Maine, 514. It may be narrow, or it may be many rods in width. Since the colonial

ordinance of 1641, now a part of the common law of this state, the shore adjoining tide waters, not exceeding one hundred rods in width, belongs to the owner in fee of upland adjoining when bounded by such waters; but it may be severed by the owner, and he may sell either or both, or he may by definite boundaries and monuments exclude the shore, or any part of it, in a conveyance of the upland. Whether the shore or flats, or any part of the same, pass by deed of the upland adjoining depends of course upon the terms of the conveyance.

In this case the boundary extends "to a stake and stones *on the shore* of Penobsot Bay, thence southeasterly by said shore to the extremity of Squam Point, so called." The evidence does not show whether the stake and stones were at high or low water mark; or at what particular point on the shore they were located. It does show, however, that the "extremity of Squam Point" was between high and low water mark. Hence, as the shore has two sides, if the stake and stones, being the particular monument named, were at low water mark, they would nevertheless be on the shore equally as if they were at high water mark. As PARSONS, C. J., has said in *Storer* v. *Freeman*, 6 Mass. 438, a case many times cited by the courts, "a boundary line is described to run to a heap of stones by the shore at Elwell's corner. The shore has two sides, high water mark and low water mark. Elwell's corner is described as a known monument. If it is at low water mark, it is by the shore, as well as if it was at high water mark. Now, if it be a fact, that this corner was a known monument at low water mark, the plaintiffs might be admitted to prove it by oral testimony. Then the boundary line, running to Elwell's corner, would cross the flats to low water mark; and the next boundary line running by the flats must run by the same side of the flats on which Elwell's corner stands; and thus the flats would be included by the boundaries of the land conveyed by the second deed." Applying these principles to this case, and from all the evidence before us, with the language of the deed to be taken most strongly against the grantor, we are not satisfied that the defendant may not be as correct in his claim to the location of the line as the

plaintiff is in his position in regard to it. Whatever the location may be in fact we need not now determine. All we need say is that the assertion of title to the shore or flats was one not wholly without foundation on the part of the defendant. He had asserted title to them in the trespass suit, and sets it up in his answer to this bill. The whole evidence goes to show that at the several times he saw the plaintiff before the bond was given indemnifying him against all loss, cost and expense on account of the trespass suit, as well as at the time his agent Small, procured the bond — the time when the alleged false and fraudulent representations were made — he honestly believed that his deed from the plaintiffs to him included the shore or flats.

What then in regard to the alleged false and fraudulent representations made by said Small?

It appears that the plaintiffs and defendant had met in reference to this claim of the defendant at least twice before that, and after judgment had been rendered against the defendant, and talked over this matter in reference to indemnity against the trespass suit. The defendant advised him to get counsel, and at each interview notified him he should commence suit upon his covenants if indemnity was not furnished. The plaintiff, had he desired so to do, could have consulted counsel in reference to his liability after being thus notified. He had ample time and opportunity. After waiting several days the defendant sent his agent Small to make some arrangement that day. It is alleged that the defendant through his agent falsely and knowingly represented to the plaintiff that he was liable upon his covenants to pay whatever judgment and costs had been or might be recovered against the defendant in the suit for trespass.

Admitting this to have been said, it was rather a representation of the law than the misrepresentation of any fact, and as laid down by the authorities would not, under the circumstances disclosed in this case, amount to fraud such as a court of equity would take cognizance of. Professor Pomeroy in his work on equity jurisprudence, discussing the nature of fraud and misrepresentations cognizable by a court of equity, says: "A misrepresentation of the law is not considered as amounting

to fraud, because, as it is generally said, all persons are presumed to know the law; and it might perhaps be added, that such a statement would rather be the expression of an opinion than the assertion of a fact." 2 Pom. Eq. Juris. § 877.

In *Fish* v. *Clelland*, 33 Ill. 243, the principle is expressed in these words: "A representation of what the law will or will not permit to be done is one on which the party to whom it is made has no right to rely; and if he does so it is his folly, and he cannot ask the law to relieve him from the consequences. The truth or falsehood of such a representation can be tested by ordinary vigilance and attention. It is an opinion in regard to the law, and is always understood as such." To the same effect may be cited the following authorities. *Upton* v. *Tribilcock*, 91 U. S. 50; *Star* v. *Bennett*, 5 Hill, 303; *Lewis* v. *Jones*, 4 B. & C. 512; *Grant* v. *Grant*, 56 Maine, 573.

By this it should not be understood that we mean to say that there may be no case of misrepresentation in regard to the law where a court of equity would not intervene. It may be that if a party should intentionally deceive another by misrepresenting the law to him, or knowing him to be ignorant of it should thereby knowingly take advantage of his ignorance for the purpose of deceiving him, a court of equity would grant relief on the ground of fraud.

But we do not feel that this case falls within that principle. An examination of the evidence leaves no doubt in the mind that the defendant believed the plaintiff liable upon his covenants for the amount of damage and cost in the Mathews suit. Judgment had been rendered against him. Costs and expenses had been incurred by him in attempting to maintain his title to what undoubtedly he believed his deed included. And if his position is correct as to the location of the line — if his deed includes the shore — then the plaintiff was liable on one or more of the covenants at the time the bond was given. *Harlow* v. *Thomas*, 15 Pick. 69: *Bachelder* v. *Sturgis*, 3 Cush. 206; *Lamb* v. *Danforth*, 59 Maine, 324; *Scriver* v. *Smith*, 3 East. Rep. 195; *Adams* v. *Conover*, 87 N. Y. 422.

Although it is alleged in the bill that the defendant threatened to commence suit and attach the property of the plaintiff if the bond was not executed, it is not claimed that these representations were not true, or that they were false and fraudulent. Unquestionably such was the intention of the defendant. The answer admits it; and he so testifies. And while it is inserted in the bill in connection with the alleged fraudulent representations, it is two edged, and may be properly regarded as strongly corrobative of the fact that the defendant believed the plaintiff liable upon his covenants to idemnify him against the judgment in the trespass suit.

It is a rule applicable alike in courts of equity as well as in courts of law, that fraud is not to be presumed, but must be established by proof. 1 Story Eq. § 190. As the charge alleged is fraud, it is incumbent on the plaintiff to satisfy the court of that fact, not merely that the representations were made, or that the defendant was imperative in pressing a claim which he believed the plaintiff liable to pay. In this case the evidence is not sufficient to support the allegation, and entry must be,

*Bill dismissed with costs.*

PETERS, C. J., DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.