JOANETTE JUNIORS, INC., Plaintiff, *v.* BOARD OF HOME MISSIONS OF CONGREGATIONAL AND CHRISTIAN CHURCHES, Defendant.

Supreme Court, Trial Term, New York County, December 20, 1949.

*Harry Bijur* for plaintiff.

*Charles H. Tuttle* and *John J. Morris* for defendant.

WALTER, J. The question in this case is whether defendant is liable for damages plaintiff claims it suffered because defendant did not inform it that a representation which was true when defendant made it later became untrue.

On January 18, 1945, defendant, a religious corporation incorporated by chapter 36 of the Laws of 1937, became the owner of a business building at 80 Madison Avenue, Manhattan, New York City. Plaintiff, a manufacturer of dresses, was then the tenant in possession of the fifth floor of that building under a lease, the term of which would expire January 31, 1946, and the rent under which was $4,500 per year.

Defendant notified plaintiff that defendant desired possession of plaintiff's space upon the termination of its lease for defendant's own immediate and personal use; and because of such notice plaintiff promptly began to endeavor to find other space to which it could move, and eventually leased space at 568 Broadway at a rental of $14,000 per year and then moved from 80 Madison Avenue to that space.

Defendant did, in fact, intend to occupy 80 Madison Avenue for its personal use, and its notification to plaintiff of that fact was entirely true when that notification was given. But conditions changed and defendant changed its intention in good faith and for good reasons, and it later sold the building for a price substantially in excess of what it had paid for it.

A prior action by plaintiff against defendant based solely upon the statutory provision for damages contained in the Emergency Rent Control Laws (L. 1945, ch. 3, § 8, subd. [d], as amd. by L. 1945, ch. 315; L. 1945, ch. 314, § 8, subd. [d]) failed because plaintiff's removal as a result of defendant's notification was held not to be an eviction of plaintiff within the meaning of these laws (*Joanette Juniors* v. *Board of Home Missions,* 273 App. Div. 999, affd. 298 N. Y. 826).

But the complaint in this action has been adjudged sufficient as alleging the familiar common-law action for damages for fraud and deceit (*Joanette Juniors* v. *Board of Home Missions,* N. Y. L. J., June 9, 1949, p. 2059, col. 2, affd. 275 App. Div. 1031).

The legal sufficiency of the complaint having been thus adjudicated, the question for me is whether the cause of action alleged has been proved.

Defendant's statement that it desired possession of plaintiff's space for its own immediate and personal use was the statement of a fact, viz., the fact of defendant's then present desire and intention, and as the Emergency Rent Control Laws (L. 1945, chs. 3, 314, 315) made such desire and intention a valid ground for removing even a rent-paying tenant, defendant's statement was, also, a statement naturally calculated to cause plaintiff to engage other space and move, and must be deemed to have been so intended. We have, therefore, a representation of fact made with intent that it be relied upon and actually relied upon. The representation, however, was entirely true when made. It was only at a later date that the representation became untrue because changed conditions caused defendant to change its mind.

The real dispute thus narrows down to whether defendant was under a duty to notify plaintiff of its change of mind, and

whether that change occurred in such time that notification thereof would have enabled plaintiff to avoid the damage of which it complains.

Defendant must be deemed to have known that its representation naturally was calculated to cause plaintiff to lease other space and move, and that plaintiff would rely upon that representation unless and until it received notice to the contrary. I thus think defendant was under a duty to notify plaintiff when it changed its intention of using plaintiff's space, for its own use, because such notification, if given in time, might cause plaintiff to forego leasing other space and moving. (See 26 C. J., Fraud, pp. 1101, 1102; 37 C. J. S., Fraud, p. 251, and Restatement, Torts, § 551.) I also assume *arguendo* that damages resulting from a breach of such duty can be recovered in an action, the complaint in which alleges the breach of duty in terms of negligence and fraud, for under the circumstances here disclosed the failure to notify plaintiff of the change was in effect the continuance of a representation which was then untrue.

I need not further pursue that point, however, because I find that the representation here did not become untrue in such time that notification thereof would have enabled plaintiff to avoid the damage of which plaintiff complains.

To explain the basis of that finding it is necessary to state in some detail the dates when certain things took place.

It was not until January, 1946, that officers of defendant became convinced that the difficulties in the way of remodeling the building for its use were practically insurmountable. Those difficulties included the death on January 12, 1946, of the architect whom defendant had engaged to plan and superintend the remodeling, interference with the obtaining of necessary materials by reason of war priorities, and advice that certain tenants would not move out unless legally evicted. Those difficulties were reported to defendant at its annual meeting held in Cleveland, Ohio, on the afternoon of January 28, 1946, and at that meeting, certainly not earlier than 4:30 P.M., there was adopted a resolution authorizing defendant's officers to sell the building and to act in connection therewith with the advice and approval of a special committee thereby appointed. Even that was inconclusive because no offer of purchase was yet before defendant for consideration; but even if defendant had immediately notified plaintiff of what had happened at its annual meeting, or even that it already definitely had abandoned the idea of occupying the building, that would not have availed plaintiff because earlier in the day of January 28, 1946, plaintiff and Prince-

way Realty Co. had agreed upon a lease by plaintiff from Princeway of the space in 568 Broadway to which plaintiff subsequently moved and plaintiff had given Princeway its check for a year's rent in advance. A formal lease of those premises to plaintiff was then signed on January 31, 1946, and it was not until February 1, 1946, that defendant received the first offer for 80 Madison Avenue to which it gave consideration; and it was not until February 5th that defendant received and its committees considered the offer of purchase which defendant finally accepted on February 7, 1946. It was about February 7th that plaintiff started dismantling its cutting tables at 80 Madison Avenue and getting the space at 568 Broadway in readiness for occupancy. Plaintiff started actual removal from 80 Madison Avenue on February 16th and completed such removal on February 23d. Defendant's contract for the sale of that building was not consummated until March 14, 1946.

Plaintiff's counsel has argued that the agreement it made with Princeway on January 28, 1946, was not legally enforcible and if defendant had promptly notified plaintiff of what defendant had done on January 28th, plaintiff could have withdrawn from its agreement with Princeway and remained at 80 Madison Avenue. I do not think that is so. Plaintiff could and did repudiate the part of its agreement with Princeway which fixed the rent plaintiff was to pay for the space at 568 Broadway, and could and did obtain, by litigation, a reduction in the amount of such rent (*Joanette Juniors* v. *Princeway Realty Co.*, 272 App. Div. 420), but no ground has been shown upon which plaintiff could have withdrawn from the arrangement it made with Princeway on January 28, 1946, other than in respect of the amount of rent stipulated in that arrangement.

The coincidence of events in the acts of plaintiff and defendant in January and early February, 1946, was close, but defendant's statement that it intended to occupy 80 Madison Avenue certainly cannot be said to have become untrue prior to 4:30 P.M. of January 28, 1946, and in my opinion it cannot be said to have become untrue before defendant actually contracted to sell on February 7, 1946, and by each of those times plaintiff had committed itself to moving. In brief, then, plaintiff relied and acted upon a truthful representation, not an untruthful one.

The complaint must be dismissed, with costs.

I direct the entry of judgment accordingly.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.