CHARLES H. HUTTON ET AL., PLAINTIFFS AND RESPONDENTS,
*v.* JOHN J. MING ET AL., DEFENDANTS AND APPELLANTS.

No. 11722.
Submitted March 10, 1970.
Decided April 6, 1970.
Rehearing Denied April 30, 1970.
467 P.2d 688.

150

Rognlien, Hash & O'Brien, Kenneth E. O'Brien (argued), Kalispell, for appellants.

L. Lloyd Evans, Fennessy, Crocker & Arness, Franklin Arness (argued), Libby, for respondents.

Mr. Justice JOHN CONWAY HARRISON delivered the Opinion of the Court.

Plaintiffs, Charles H. Hutton and Annette Hutton, brought this action in the district court of the eleventh judicial district, Lincoln county, to recover actual and punitive damages from the defendant, John J. Ming. The basis of the action was fraudulent misrepresentation and conversion. The jury returned a verdict against the defendant, John J. Ming, for actual and punitive damages. Defendant Ming appeals from the judgment entered on the verdict and from orders denying his motions for new trial and for judgment notwithstanding the verdict.

In late 1963, the plaintiffs, Charles H. Hutton and Annette Hutton, husband and wife, purchased a type of prefabricated dwelling sold under the trade name of "Capp-Homes". Capp-Homes are delivered in partially finished sections which are assembled on the site to form the roofed and enclosed shell of a house. Prefabricated materials to finish the interior of

the house are supplied with the package. Plaintiffs had finished the downstairs portion of their home early in 1966, but had not laid the hardwood flooring.

In 1965 Mrs. Hutton underwent major surgery and the family became delinquent on their house payments and were in financial difficulty. In March 1966, Huttons went to the real estate office of defendant Ming to seek some assistance in refinancing their home. They received some encouragement from Ming, but he told them he could not obtain a mortgage on an unfinished dwelling.

In the belief that if the flooring was laid Ming could arrange a mortgage for the home, the Huttons laid and finished the hardwood flooring on the main floor of the house. Ming then told them it would be necessary to finish the bedrooms on the upper floor, install a heat duct system, and replace the wood burning furnace before refinancing could be arranged. The Huttons were unable to afford the materials to make these improvements. Ming suggested to the Huttons that they might be able to work out a debt consolidation plan with the credit bureau, but the Huttons were unable to set up such a plan. They allege that they then requested Ming to sell the house for them.

Ming denies entering into any agreement for the sale of the house. In support of his denial, he points out the absence of any evidence as to a written contract for the sale of real estate which is required by Montana law. Significantly, even the Huttons did not testify that a sale price had ever been established.

On October 11, 1966, Capp-Homes wrote Ming and inquired about his efforts to sell the Huttons' house. Ming replied October 17, stating that he was no longer trying to assist the Huttons and that he had never attempted to sell the house for them. In that same letter he stated he would like to take over the house payments and sell the house for Capp-Homes. Capp-Homes replied on October 21, inquiring as to the pos-

sibility of obtaining a quit claim deed from the Huttons and indicating they would be willing to discuss a transfer of the property to Ming. On December 13, Ming replied that he was interested in purchasing the property and he would talk to the Huttons.

Ming discussed the quit claim deed with the Huttons and they both signed a quit claim deed dated December 23, with the condition they could remain in the house until school was out the following spring. On December 23, 1966, Ming wrote Capp-Homes that he had the deed in his possession and offered to finish, repair and sell the house for Capp-Homes. Several letters passed between Capp-Homes and Ming before negotiations for Ming's purchase of the house for $8,900 were completed on April 11, 1967.

School was out June 1, 1967. On May 31, Ming went to the Huttons' home and asked when they would be out of the house. They asked for two more months, but Ming refused because he had already rented the house to another person. Two or three days later Ming returned and found the Huttons had not vacated the property; he demanded they leave. When he returned on June 9, 1967, they were gone.

Huttons left an electric clothes dryer, three or four boxes of clothes, and a damaged couch in the house. Mrs Hutton testified the total value of these articles was approximately $300 to $350. Ming had his workman put the dryer in the basement and haul the boxes and couch to the dump. He then completed the unfinished portions of house and refinished the walls and floor on the main floor. A concrete floor was poured in the basement and concrete steps were poured in both the front and back of the house. Heating ducts and a new furnace were installed.

Defendant set forth some thirteen issues for this Court's consideration. We believe the issues can be narrowed to two issues and full consideration be given to the case. (1) Is there sufficient evidence of fraud and misrepresentation by Ming

to support a verdict for both compensatory and punitive damages? (2) Whether or not defendant is liable for damages for conversion.

Huttons allege Ming misrepresented to them that if the floors were laid and finished they could obtain a loan; that if they executed the quit claim deed they could live in the house until school was out; that Charles H. Hutton was not eligible for a Veterans Administration loan; that the only way the Huttons could avoid the immediate loss of their home was to sign the deed; also, that Ming fraudulently failed to advise them of their rights to possession during foreclosure and their right of redemption after foreclosure.

In order to establish a claim of fraud a claimant must prove (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the intent that it should be acted upon in the manner contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance upon its truth; (8) the right of the hearer to rely thereon; and (9) the hearer's consequent and proximate injury or damage. Healy v. Ginoff, 69 Mont. 116, 220 P. 539. Here, the evidence clearly indicates there was no false representation made in at least three of the instances the Huttons raise as fraudlent. Capp-Homes was going to foreclose on their mortgage immediately, as the letters from that company to Ming indicate. The Huttons were allowed to live in the house from the date of quit claim deed until school was out in June. Mr. Vanderwood, appraiser for the Federal Housing Authority and for the Veterans Administration, testified that the Huttons, in fact, were not eligible for a Veterans Administration loan because of the large part that a credit rating plays in obtaining a Veterans Administration loan and because the Hutton house was unfinished.

There is a lack of proof that Ming falsely represented to the Huttons they would be able to obtain a loan on the house

if they laid the hardwood flooring. However if that were the case, there is no evidence showing any consequent and proximate damage to the Huttons, for they laid the flooring which had been supplied with the original house package. There was no evidence produced of cost of materials used or of any labor required to lay the flooring. Furthermore, the Huttons lived in the house for almost fourteen months after the flooring was laid, and they received the benefits of its installation during that period.

The allegations that Ming fraudulently (1) advised the Huttons the only way they could avoid the immediate loss of their home was by signing a quit claim deed, and (2) failed to advise Huttons of their right to possession during foreclosure and redemption after foreclosure, are both allegations based on advice about what the law is, rather than a misrepresentation of a fact.

"A misrepresentation or opinion expressed by one of the parties to the other as to what the law is relative to their respective rights in the matter, which is the subject of negotiations, is not a fraudulent misrepresentation within this rule.

\*       \*       \*       \*       \*       \*       \*       \*

"If, however, a relation of trust and confidence exists between the parties, a misrepresentation or opinion by the party in whom the trust and confidence is reposed as to what the law is, if made for the purpose of deceiving the other or of gaining an unconscionable advantage over him, forms an exception to the foregoing rule, and constitutes a ground for relief." Emerson-Brantingham Implement Co. v. Anderson, 58 Mont. 617, 626, 627, 194 P. 160, 164.

However, in this situation there are no facts that indicate the existence of a relationship of trust and confidence required to implement the exception to the rule. The Huttons had originally sought out Ming for advice and help. Ming had not been in contact with the Huttons from April until December, when he discussed the quit claim deed with them,

a period of almost eight months. He had never acted as a real estate agent for the sale of their house nor had he any listing of their house with a sale price. There is no evidence that they placed any particular confidence in him.

" 'To establish a fiduciary relationship upon the violation of which fraud is sought to be based, there must be something more than mere friendly relations or confidence in another's honesty and integrity. There must be something in the particular circumstances which approximates a business agency, a professional relationship, or a family tie, something which itself impels or induces the trusting party to relax the care and vigilance which he otherwise should, and ordinarily would, exercise.' " Hood v. Cline, 35 Wash.2d 192, 212 P.2d 110, 115.

A confidential relationship is a fact to be established in the same manner and by the same kind of evidence as any other fact is proven. In re Rugani's Estate, 108 Cal.App.2d 624, 239 P.2d 500. Here, the Huttons failed to prove the existence of any such relationship; therefore their allegations of fraudulent misrepresentation have no merit.

Huttons also sought damages for an alleged conversion of two or three boxes of clothes, a damaged couch, a clothes dryer, and other miscellaneous articles they left in the house. The record is clear that Ming rightfully took possession of the house, according to the agreement he made with the Huttons. The property allegedly coverted was in the house when he took possession and in the belief of the articles were abandoned debris, Ming had everything except the clothes dryer hauled to the dump.

"Where the original taker acquires possession of the property rightfully, a demand and refusal are ordinarily necessary to give rise to a cause of action in conversion." Foster v. First National Bank of Missoula, 139 Mont. 396, 401, 365 P.2d 938, 941.

156

The record is clear that no demand for the property was made. There is no proof of the essential elements of conversion.

The two basic issues on appeal have been resolved as unproven, therefore, as a matter of law, no recovery of either punitive or compensatory damages can be permitted. The other specifications of error raised by the defendant are rendered moot by the resolution of the two basic issues and those matters need not be discussed.

The action is remanded to the district court with directions to reverse the judgment and dismiss the complaint.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL and CASTLES, concur.