## David H. Winton v. Johnson & Dix Fuel Corp.

[515 A.2d 371]

No. 84-186

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed July 7, 1986

*Douglas S. Moore* of *Brownell & Moeser*, Norwich, for Plaintiff-Appellee.

*Laurence F. Gardner* and *Bernard Waugh*, Hanover, New Hampshire, for Defendant-Appellant.

**Allen, C.J.** The defendant, Johnson & Dix Fuel Corporation, appeals the trial court's determination that its advertisement for a solar hot water heater violated the Consumer Fraud Act, 9 V.S.A. §§ 2451-2462. Plaintiff cross appeals the court's dismissal of his fraud claim and the adequacy of the damages awarded. We affirm on the issue of liability but remand for further proceedings on the issue of damages.

In September, 1980, the plaintiff purchased a Daystar solar hot water heater from the defendant. The plaintiff's interest in the solar device was sparked by newspaper and radio advertisements for the heater, including statements that emphasized the availa-

bility of the Vermont state energy tax credit, 32 V.S.A. § 5922. These statements, however, did not mention that the credit was available only to "resident individual" taxpayers. The plaintiff was not a resident taxpayer within the meaning of the statute and, as a result, his application for the tax credit was denied. After an unsuccessful administrative appeal of the denial, plaintiff instituted an action against the defendant, which is the subject of the present appeal.

The plaintiff contended that the advertisements were intentionally misleading, and therefore actionable in fraud. He also claimed that the misleading advertisements were in violation of the Consumer Fraud Act. At a bench trial, the trial court found that the defendant was unaware of the residency requirement, and concluded that "fraud cannot be predicated on an opinion of law in this situation . . . ." Accordingly, he dismissed the plaintiff's fraud claim. The court, however, also concluded that the advertisements, absent any statement about the residency requirement, were capable of deceiving a consumer, and held that the defendant had violated the Consumer Fraud Act, 9 V.S.A. § 2453. The court awarded the plaintiff $1,000 in actual damages caused by the denial of the tax credit, and attorney's fees as allowed by the Act. While the Act also allows an award of exemplary damages, the court concluded that the plaintiff had waived this claim.

On appeal, the defendant contends that the trial court erred in concluding that the advertisements were capable of deception, and that, as a matter of law, there can be no violation of the Consumer Fraud Act absent a showing that defendant possessed a culpable mental state. The plaintiff cross appeals the dismissal of his first count sounding in fraud, the finding that he waived exemplary damages, and the amount of the attorney's fees award.

During the pendency of this appeal, this Court held in *Bagley* v. *Vermont Department of Taxes*, 146 Vt. 120, 500 A.2d 223 (1985), that the residency requirement upon which the Tax Department based its denial of the credit was unconstitutional, and an order was issued to show cause why this matter was not rendered moot by the holding in *Bagley*. The issue of mootness and the merits will be addressed in order.

### I. *Mootness*

 The general rule underlying the mootness doctrine is that a case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *In re S. H.*, 141 Vt. 278, 280, 448 A.2d 148, 149 (1982) (quoting *United States Parole Commission* v. *Geraghty*, 445 U.S. 388, 396 (1980)). "The mootness doctrine requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *In re Gross*, 476 Pa. 203, 209, 382 A.2d 116, 119 (1978) (quoting G. Gunther, Constitutional Law 1578 (9th ed. 1975)). An issue can be made moot by a change in the law as well as by a change in the facts. *Id.* at 209, 382 A.2d at 120.

The defendant suggests two theories of mootness in this case: one, that *Bagley* renders its representation true at the time it was made, and two, that the plaintiff can now obtain his tax benefit and be made whole, thereby eliminating all legal harm, whether or not the original representation was false. In order to examine the mootness issue the Court will assume, arguendo, that an untrue representation was made at the time of the sale, and then examine whether later events (here, the *Bagley* decision) can equitably be said to have rendered the untrue representation true as a matter of law at the time it was made. If it is concluded that *Bagley* did not render the representation true when made, it must then be determined whether this case is nevertheless moot because *Bagley* has the effect of making the plaintiff whole and eliminating any legal harm.

The gist of the complaint is that the defendant's representations about the availability of an energy tax credit were both fraudulent and violated the Consumer Fraud Law because they were capable of deceiving a consumer. The issue of the change in the law brought on by our decision in *Bagley* is critical, because the allegedly deceptive claim in the advertisements for the solar device purchased by the plaintiff was clearly a representation about the state of the law, under either count of the complaint.

While representations about the status of the law were held at common law not to be actionable, *Abbott* v. *Treat*, 78 Me. 121, 125-26, 3 A. 44, 46-47 (1886), and actionable only in limited circumstances in Vermont, *Rice's Admr.* v. *Press*, 117 Vt. 442, 447, 94 A.2d 397, 399-400 (1953), the rule has long been subject to

strong qualifications.[1] An important distinction must be made between representations of legal *opinions* and representations of *fact* relating to the law as it exists. While it is fruitless to attempt to conform every decision to a single consistent principle, in general, cases have distinguished between misrepresentations involving opinions and those involving facts. The first involves the legal meaning and effect of a statute, court ruling, document, instrument or other source of law, while the latter involves statements that imply the existence of accurate and readily ascertainable facts that either concern the law or have legal significance, but which are not part of the law themselves.

Many cases involve statements of opinion. In *Hutton* v. *Ming*, 155 Mont. 149, 467 P.2d 688 (1970), for instance, a realtor told an owner that the only way to avoid the loss of his home was to sign a quitclaim deed. The basis of the representation was the realtor's judgment that a general provision of law applied to the facts of the plaintiff's case in a particular way, clearly a matter of opinion rather than a misrepresentation of fact. *Id.* at 154, 467 P.2d at 690. See also *Christopher* v. *Whitmire*, 199 Ga. 280, 283, 34 S.E.2d 100, 102 (1945) (representation to woman that divorce from former husband in another jurisdiction was valid held to be expression of opinion); *Ryan* v. *Lumbermen's Mutual Casualty Co.*, 485 S.W.2d 548 (Tenn. 1972) (workers' compensation claim manager's misrepresentation to claimant that "Tennessee would not accept jurisdiction" of claimant's case). In each of these cases, the court concluded that opinions cannot give rise to misrepresentation, because opinions are not facts, and the tort of fraud is grounded upon a defendant's misrepresentation of facts. See Keeton, *Fraud-Misrepresentations of Law*, 15 Tex. L. Rev. 409 (1937).

By contrast, many cases that are characterized as involving representations of law actually involve representations of facts that concern the law or that have legal significance. These fact-representation cases have as their common thread that the representor generally states or implies that the matter asserted is readily ascertainable, is not subject to specialized or expert interpretation, and does not depend on judgment or speculation about future

---

[1] See W. Prosser & W. Keeton on Torts § 109, at 758-69 (5th ed. 1984); James & Gray, *Justifiable Reliance: "Fact" and "Opinion"—Statements of Law*, 37 Md. L. Rev. 488, 494-96 (1978).

events as fundamental to the accuracy of the assertion. See, e.g., *City of Aurora* v. *Green*, 126 Ill. App. 3d 684, 688, 467 N.E.2d 610, 614 (1984); *Bobak* v. *Mackey*, 107 Cal. App. 2d 55, 57, 236 P.2d 626, 627 (1951). As one commentator has said:

> Misrepresentations of law have often been called statements of opinion on which no one has a right to rely. But here, too, the statement may imply the existence of external facts. For one thing it may imply the existence or nonexistence of an applicable statute, regulation, or judicial decision, and this is one kind of external fact which may seem very important to the person addressed by the statement.

James & Gray, *supra*, at 494. (Citations omitted).

The representations by the defendant in the present case concerned the law, i.e., the status of defendant's products under Vermont tax statutes, but were fashioned as facts, rather than opinions about the application of the law. A prospective customer might have been induced to purchase one of the defendant's products because of the favorable tax benefits alone, with the understanding that the right to obtain the tax benefit was an established fact and that the cost of obtaining the tax benefit would not be significant with respect to the benefit itself.

Where a representation as to a matter of law is essentially a matter of fact, the recipient may rely on it in a business transaction to the same extent as the recipient would other facts. Restatement (Second) of Torts § 545(1) (1977). This principle is not applicable where it is clear from the full text of a representation or from facts about the relationship of the parties that reliance should only follow an independent inquiry. No such limitation, however, is presented in the instant case. Made in connection with other inducements to purchase the defendant's product, the representations here contained no provisos or warnings that they were subject to legal doubt or interpretation, but simply conveyed the words of a statute, and hence could be considered representations of facts, not opinions. In other words, representations in the defendant's advertisements implied to consumers that the availability of the Vermont tax credit was a fact that was clear and uncontroverted. The defendant, in effect, said that as an established fact the Vermont statute provided for a tax credit when one purchased defendant's product. That statement was not true when made to this plaintiff.

242

The defendant urges us to declare this appeal moot because, in light of *Bagley*, "[t]he advertising statements of Johnson & Dix Fuel Corp. regarding the availability of the renewable energy tax credit were . . . not misrepresentations." Whether or not *Bagley* may be applied retroactively as tax law[2] is not before the Court. *Bagley* did not, however, render the defendant's representations true at the time they were made, and the status of the facts on the date of representation is controlling. *Hagarty* v. *Dysart-Geneseo Community School District*, 282 N.W.2d 92, 95 (Iowa 1979); *Joanette Juniors, Inc.* v. *Board of Home Missions of the Congregational & Christian Churches*, 197 Misc. 291, 293, 94 N.Y.S.2d 753, 755 (Sup. Ct. 1949).

Allowing the defendant to argue that an independent change in the law should render true an allegedly false advertisement about the state of the law made *prior* to the change would work obvious inequities to those who may have reasonably relied to their detriment on the statements as made. Even if plaintiff can now recover the tax credit earlier denied, that question is properly addressed in assessing damages, rather than in determining liability. See *Crowther* v. *Guidone*, 183 Conn. 464, 469, 441 A.2d 11, 13-14 (1981).

In *Fawcett* v. *Sun Life Assur. Co. of Canada*, 135 F.2d 544 (10th Cir. 1943), the appellee company warranted that $40,000 payable upon the appellant's death would be free and clear of all estate taxes as insurance, under an Internal Revenue ruling on the point. There was no such ruling, and the plaintiff subsequently learned his policy would be subject to a tax. After this transaction the law was changed to eliminate the earlier preference for insurance. The appellee argued that the issue of misrepresentation was moot, because the plaintiff's policy proceeds would be taxed under the amended law in any case. The court said:

> Finally, it is urged that the question has become moot because under the change in the law, the proceeds from insurance contracts are now subject to tax collection, and that therefore appellant has not been injured by the alleged mis-

---

[2] See *Kansas City Millwright Co.* v. *Kalb*, 221 Kan. 658, 562 P.2d 65 (1977) (retroactivity of decision holding certain sales tax provision unconstitutional); see also generally *Solomon* v. *Atlantis Development, Inc.*, 145 Vt. 70, 483 A.2d 253 (1984).

representation that this was an insurance contract. With this we cannot agree. Appellant sought an investment that was free from estate taxes. Relying upon appellee's representations in the matter, he parted with $44,000 which he would not have done otherwise. If the representations were made and induced him to part with this sum in reliance thereon, he suffered substantial injury.

*Id.* at 546.

█ We hold that representations like those at bar are representations of fact, that a trier of fact could determine that the plaintiff reasonably relied on the representation, and that the date on which the reasonableness of the reliance is to be judged is the date on which the defendant's advertisements appeared. This action is thus not moot.

## II. *The Merits*

█ The trial court concluded "that under all the circumstances the advertisements placed by the defendant were capable of deceiving a consumer respecting the availability of the Vermont tax credit." The court added, "There is no evidence that any agent of Johnson & Dix was either aware of the residence requirement or inquired of the Vermont State Tax Department about whether there were any special requirements." The defendant asserts that the trial court erred in finding that the defendant's advertisements were capable of deceiving the plaintiff or that he was deceived by them. These were factual matters to be decided by the trier of fact, and based on the record below, the nature of the transaction, and the text of the advertisements at issue, we cannot say that these findings were clearly erroneous.

█ The defendant next argues that Vermont's Consumer Fraud Act, 9 V.S.A. §§ 2451-2462, "implies some kind of culpability," and that in the present case there had been no intentional misrepresentation or bad faith. This claim is without merit. Intentional misrepresentation or bad faith is not required for liability under the act. *Federal Trade Commission* v. *Algoma Lumber Co.*, 291 U.S. 67, 81 (1934); *Murphy* v. *McNamara*, 36 Conn. Supp. 183, 187-88, 416 A.2d 170, 174-75 (1979); see also *The Great Atlantic & Pacific Tea Co.*, 85 F.T.C. 601, 661 (1975).

█ The defendant argues that advertisers would "henceforth become strictly liable as guarantors of whatever they say, regard-

less of fault," if the plaintiff is not required to show that the statements were intentional or negligent.[3] The strict liability analysis is inapposite to this appeal. An advertiser is at fault in publishing a false or misleading statement. The Consumer Fraud Act does not require a showing of intent to mislead, but only an intent to publish the statement challenged. The advertising medium is not immune from attack under the statute. In *State ex rel. Babbitt* v. *Goodyear Tire & Rubber Co.*, 128 Ariz. 483, 486, 626 P.2d 1115, 1118 (1981), a case involving ads for tires that allegedly misled the consumer concerning the amount of federal excise tax, the court held:

> In light of the purpose of the Consumer Fraud Act, which is to protect the public from deceptive acts, we hold that the only showing of intent required by A.R.S. § 44-1522 is an intent to do the act involved. It is not necessary to show a specific intent to deceive. In the context of advertising, once it has been shown that the act complained of is encompassed by A.R.S. § 44-1522, a prima facie showing of the intent to do the act is made by the placing of the advertisement.

The trial court in this case found that the defendant falsely represented the availability of the tax credit. The finding sufficiently supported its conclusion that defendant was liable under the Consumer Fraud Act.

## III. *Damages*

The trial court awarded the plaintiff actual damages of $1,000 and attorney's fees of $2,176.02 but refused to award exemplary damages. Plaintiff appeals this refusal, contending that the trial court erroneously concluded that the plaintiff had waived exem-

---

[3] Defendant's reliance on *Christie* v. *Dalmig, Inc.*, 136 Vt. 597, 396 A.2d 1385 (1979), is misplaced. *Christie* did not involve misrepresentation; it concerned the issue of when goods in boxes were damaged in the course of travel from a seller to a buyer. *Christie* holds only that a breach of warranty does not necessarily imply unfairness. A seller may breach a warranty, but his conduct, if similar to that in *Christie*, will not be in violation of the Consumer Fraud Act. False representations are on a different legal and factual footing. False representations by sellers are explicitly prohibited by 9 V.S.A. § 2453 and by their nature tend to be unfair to buyers, and are actionable when buyers rely on them to their detriment.

plary damages allowable under § 2461(b) which the defendant concedes. Nevertheless, we affirm the denial of exemplary damages, based on the court's conclusion that defendant had not "intentionally and knowingly withheld and concealed from consumers" the existence of the tax credit's residence requirement.

Attorney's fees must be awarded by the trial court once the court has found that the Consumer Fraud laws have been violated; their award is not within the trial court's discretion. *Gramatan Home Investors Corp.* v. *Starling*, 143 Vt. 527, 535-36, 470 A.2d 1157, 1162 (1983). *Gramatan* did not hold, however, that exemplary damages exist whenever attorney's fees exist. It is true attorney's fees and exemplary damages share the same broad purpose under the Consumer Fraud Law of making plaintiffs whole and discouraging unfair or deceptive acts in commerce. Nonetheless, there are important differences. Attorney's fees claims are often generated in cases litigated under the Consumer Fraud Act, and the existence of such a claim is readily demonstrated through documentary evidence reflecting services rendered. If attorney's fees are incurred by a successful plaintiff, they are automatically awarded under *Gramatan*. By contrast, while exemplary damages are also automatically awarded when found, their existence in the first instance depends on a showing of malicious conduct warranting the imposition of exemplary damages. *Bruntaeger* v. *Zeller*, 147 Vt. 247, 254, 515 A.2d 123, 127 (1986).

The plaintiff's evidence in this case does not meet the threshold requirement for exemplary damages, and the trial court's denial was proper. While defendant's representations were false and caused the plaintiff damage, nothing in the record below supports a finding of purposeful and malicious conduct, or a finding that defendant's statement was made with such reckless disregard for its truth or falsity which could have supported a conclusion that defendant was indifferent to the contents of its ad and the damage it might cause.

Plaintiff further asserts that the amount of the attorney's fee award was inadequate because it did not consider trial preparation and actual trial time in the award. The trial court's fee determination, however, was based on the evidence introduced by the plaintiff. The record demonstrates that the omissions were the fault of the plaintiff and that at the time the evidence was submitted, the plaintiff did not advise the court or the defendant that the submittal was less than complete. The court acted within

its discretion in awarding fees in accordance with the plaintiff's original evidence.

The major damage issue on appeal results from the decision in *Bagley, supra,* which raises the possibility that the plaintiff may now obtain a tax credit for the purchase of the water heater. While the plaintiff might have pursued an appeal from the Tax Department's denial of a credit, he was not bound to do so, given the state of the law at that time. If, however, the defendant can establish that the plaintiff is now entitled to a credit following *Bagley*—a question not before this Court—then the defendant should benefit from the resultant mitigation of plaintiff's damages, and the trial court should modify the judgment accordingly. If, however, entitlement to the claim is not clear and the claim is not routinely paid by the Tax Department, the expense in pursuing the claim should be borne by the defendant.

### IV. *Dismissal of the Count Sounding in Fraud*

■ Plaintiff, finally, cross appeals the dismissal of his fraud count. The court based its dismissal in part on its finding that defendant's agents were unaware that their representations were false. Absent a showing that a misrepresentation was false when made and known to be false by the defendant, the action for fraud could not lie. *Union Bank* v. *Jones*, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980). The other cross appeal grounds are without merit.

*The decision below on the merits is affirmed. The matter is remanded for consideration of a motion by the defendant, should it be so advised, to require the plaintiff to pursue his tax credit claim, in accordance with this opinion.*