**Deborah S. KESSLER, Plaintiff,**

v.

**William R. LOFTUS, William R. Loftus, P.C., and Nighswander, Lord & Martin, P.A., Defendants.**

**No. 2:96–CV–241.**

United States District Court, D. Vermont.

Nov. 12, 1997.

Herbert Gouverneur Ogden, Jr, Liccardi, Crawford & Ogden, Rutland, VT, for Plaintiff.

William D. Cohen, Reiber, Kenlan, Schwiebert, Hall & Facey, P.C., Rutland, VT, Melissa A. Martin, Nighswander, Martin & Mitchell, P.A., Laconia, NH, Herbert Gouverneur Ogden, Jr, Liccardi, Crawford & Ogden, Rutland, VT, for Defendants.

### OPINION AND ORDER

SESSIONS, District Judge.

In this attorney malpractice action, Defendants William R. Loftus and William R. Loftus, P.C. ("Loftus"), move to dismiss Count III of Plaintiff's Revised Amended Complaint, which alleges a violation of Vermont's Consumer Fraud Act, Vt.Stat.Ann. tit. 9, ch. 63 (1993 and Supp.1997) ("CFA"). For the

reasons that follow, Defendants' motion to dismiss (paper 28) is granted.[1]

### I. *Factual Background*

The following facts are taken to be true, for purposes of this motion. Attorney Loftus represented Deborah Kessler during and following her divorce from Dr. Kenneth Butler. The terms of the divorce decree, entered September 14, 1993, required Butler to pay Kessler a substantial property settlement. The debt was to be secured by a mortgage on his real estate in Whitingham, Vermont. In November 1994, Butler filed a bankruptcy petition in the United States Bankruptcy Court for the District of Vermont. In January 1995 Loftus filed a copy of the divorce order in the land records of the Town of Whitingham. Because the bankruptcy petition had already been filed, the late filing of the divorce decree in the land records created no security interest. As an unsecured creditor, Kessler received a substantially lower settlement than she would have received if the divorce decree had been recorded before the petition in bankruptcy was filed.

At the time Loftus began representing Kessler, in November 1991, he was associated with the firm of Nighswander, Martin & Mitchell, P.A. ("NMM"), Loftus left NMM on or about May 31, 1994, and thereafter practiced in his own firm, William R. Loftus, P.C. At that time, Kessler chose to have Loftus continue to represent her, and authorized NMM to release her file to Loftus.

In Count III of her Revised Amended Complaint, Kessler claims that Loftus falsely and fraudulently led her to believe that she had adequate security for the debt, and that he had represented her competently, and that these representations led her to retain Loftus as her lawyer. She seeks damages or the value of the consideration she gave, together with attorneys fees, under Vt.Stat. Ann. tit. 9, § 2461(b). Loftus contends that Vermont's Consumer Fraud Act does not apply to representations made during the actual practice of law, and that the count must be dismissed.

---

1. Defendant Nighswander, Lord & Martin, P.A.     was dismissed from the suit on March 20, 1997.

II. *Discussion*

The Court has jurisdiction over this matter based on diversity, and applies the substantive law of the state of Vermont. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Section 2453(a) of Title 9 of the Vermont Statutes Annotated prohibits "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." Vt.Stat.Ann. tit. 9, § 2453(a) (1993). Section 2461(b) of Title 9 provides a private right of action to consumers who contract for goods or services in reliance upon false or fraudulent representations or practices prohibited by Section 2453, or who sustain damages or injury as a result of same. Vt.Stat.Ann. tit. 9, § 2461(b) (1993).

■ A "deceptive act or practices" "is a material representation, practice or omission likely to mislead a reasonable consumer." *Bisson v. Ward,* 160 Vt. 343, 351, 628 A.2d 1256, 1261 (1993). The term "in commerce" has not been defined by statute or case law in Vermont. *State v. International Collection Serv., Inc.,* 156 Vt. 540, 544, 594 A.2d 426, 429 (1991). In construing Section 2453(a), however, courts are to be "guided by the construction of similar terms contained in section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States." Vt.Stat.Ann. tit. 9, § 2453(b) (1933); *International Collection,* 156 Vt. at 544, 594 A.2d at 429.

The United States Supreme Court has made clear that the practice of law involves commerce. *See Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,* 471 U.S. 626, 645, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (FTC's mandate to eliminate deceptive advertising includes that of attorneys); *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 457, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) (solicitation by a lawyer of remunerative employment is a business transaction); *Bates v. State Bar of Arizona,* 433 U.S. 350, 371–372, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (belief that lawyers are somehow "above" trade has become an anachronism); *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 787–88, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)

(legal profession not exempt from Sherman Act). The Second Circuit Court of Appeals has similarly held that the business aspects of professional associations fall within the scope of the Federal Trade Commission Act. *American Medical Ass'n v. F.T.C.,* 638 F.2d 443, 448 (2d Cir.1980) *aff'd per curiam,* 455 U.S. 676, 102 S.Ct. 1744, 71 L.Ed.2d 546 (1982). There is no blanket exclusion of practitioners of law from the prohibitions of Vermont's CFA.

The question remains, however, whether a particular attorney representation constitutes a "material representation, practice or omission" made in commerce, for purposes of a CFA claim. All states have some form of unfair trade practice or consumer protection act. In applying these acts to the actions of attorneys, many jurisdictions differentiate between the commercial, entrepreneurial aspects of law and the legal, advisory, analytical aspects of law, holding that their unfair trade practices acts apply only to the former. *See e.g.,* Randall Scott Hetrick, *Unfair Trade Practices Acts Applied to Attorney Conduct: A National Review,* 18 J. Legal Prof. 329, 330–332 (1993); *see also e.g., Cripe v. Leiter,* 291 Ill.App.3d 161, 225 Ill.Dec. 346, 683 N.E.2d 514, 516 (1997); *Tetrault v. Mahoney, Hawkes & Goldings,* 425 Mass. 456, 681 N.E.2d 1189, 1195 (1997); *Short v. Demopolis,* 103 Wash.2d 52, 691 P.2d 163, 168 (1984) (en banc). Two published Vermont Superior Court decisions have held likewise: *Whitcomb v. Davis,* No. 179–10–930sCv, 1 Vt. Trial Ct.Rep. 113 (Vt.Super. Nov. 5, 1996); *Jackson v. Triggs,* No. S503–94CnC, 1 Vt. Trial Ct.Rep. 69 (Vt.Super. Apr. 10, 1996).

The Court finds the reasoning of these cases persuasive. In *Jackson v. Triggs,* for example, clients brought malpractice and consumer fraud claims against their former attorney for failure to report in his title opinion and certificate of title that a Vermont Board of Health subdivision permit regulation applied to property they were buying. In a well-reasoned opinion, Judge Alden T. Bryan held that "representations made by an attorney to a client are exempt from the CFA if they fall within the definition of the actual practice of law.... [defined as] those matters 'requiring the professional judgment

of an attorney based upon his or her legal knowledge and skill.'" *Id.* at 70 (quoting *Rousseau v. Eshleman,* 128 N.H. 564, 519 A.2d 243, 250 (1986) (Johnson, J. dissenting)). In granting summary judgment for the defendant, Judge Bryan concluded that the defective title opinion was rendered in the course of representing a client, and was thus outside the scope of the CFA. *Id.* at 69–70.

Similarly, in *Whitcomb v. Davis,* Judge Brian Burgess, relying on the *Jackson* opinion, dismissed a CFA claim by a divorce client against her former attorney, which alleged that the attorney erroneously advised her that her final divorce order requiring her spouse to assume responsibility for mortgages would relieve her of any liability for them. Even if the advice were grossly incompetent, the Court stated, an inaccurate opinion is not "a 'deceptive' act or practice 'in commerce.'" 1 Vt. Trial Ct.Rep. at 113.

These Superior Court holdings are consistent with the solitary Vermont Supreme Court decision which has discussed legal opinions in the context of a Consumer Fraud Act claim, *Winton v. Johnson & Dix Fuel Corp.,* 147 Vt. 236, 515 A.2d 371 (1986). In *Winton,* the trial court determined that an advertisement for a solar hot water heater violated the Consumer Fraud Act, where it incorrectly stated that a Vermont energy tax credit was available to all purchasers. In affirming the trial court, the Vermont Supreme Court drew a distinction between "representations of legal *opinions* and representations of *fact* relating to the law as it exists," explaining that

> [t]he first involves the legal meaning and effect of a statute, court ruling, document, instrument or other source of law, while the latter involves statements that imply the existence of accurate and readily ascertainable facts that either concern the law or have legal significance, but which are not part of the law themselves.

*Id.* at 240, 515 A.2d at 373–74 (emphasis in original). Because the advertisement contained a representation of law that was essentially a matter of fact, *i.e.,* that a statute provided for a tax credit, the statement was actionable under the Consumer Fraud Act. *Id.* at 243, 515 A.2d at 375.

In the instant case, Kessler alleges that Loftus led her to believe that she had adequate security for the debt, and that he had represented her competently. These representations may give rise to a malpractice claim, but are not actionable under the CFA, because they are Loftus's "professional judgment based upon his ... legal knowledge and skill." *Jackson,* 1 Vt. Trial Ct.Rep. at 70. Kessler alleges further, however, that Loftus's inaccurate representations caused her to retain Loftus as her lawyer.

The commercial, entrepreneurial aspects of the practice of law include advertising, billing and collection practices, fee arrangements, and methods of obtaining, retaining and dismissing clients. *See Heslin v. Connecticut Law Clinic of Trantolo and Trantolo,* 190 Conn. 510, 461 A.2d 938 (1983) (advertising); *Cripes v. Leiter,* 683 N.E.2d at (billing); *Reed v. Allison & Perrone,* 376 So.2d 1067 (La.Ct.App.1979) (advertising); *Guenard v. Burke,* 387 Mass. 802, 443 N.E.2d 892 (1982) (fee agreement); *Eriks v. Denver,* 118 Wash.2d 451, 824 P.2d 1207 (1992) (en banc) (prices, billing, collecting; how firm obtains, retains and dismisses clients). If a lawyer's misrepresentations affect one of these aspects, they will be actionable under the CFA. For example, in *Eriks v. Denver,* investors in a failed tax shelter scheme alleged that their attorney's concurrent representation both of them and of the promoters of the scheme was not only a conflict of interest, but an unfair or deceptive act under the state's consumer protection act. They argued that but for the attorney's concealment of the conflict of interest, the investors would not have hired the attorney, and therefore the deceptive act related to the entrepreneurial aspects of his practice. In denying summary judgment, the Washington Supreme Court, en banc, held that the attorney would be liable under Washington's consumer protection act if the fact finder concluded that the attorney failed to disclose the conflict of interest for the purpose of obtaining clients or increasing profits. *Id.* 824 P.2d at 1214.

Applying *Eriks'* reasoning to the allegations in the instant case, Loftus could be

**244**

found to have violated the CFA only if he concealed or misrepresented facts, not opinions, in order to persuade Kessler to retain him as her attorney when he left his former law firm. Kessler conceded at oral argument that Loftus said nothing at all to her in an attempt to persuade her to keep him on as her attorney.

For a motion to dismiss, this Court must accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Buckley v. Consolidated Edison Co.*, 127 F.3d 270, 272 (2d Cir.1997). Only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief' " should a claim be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 20 (2d Cir.1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Even reading the complaint with great generosity, *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 558 (2d Cir.1985), the Court cannot construe it to make out a claim under the CFA. At best, Kessler claims that because Loftus informed her that she had adequate security (or never informed her that she did not), she trusted that she did have adequate security and a lawyer who had done a good job for her. On that assumption, she chose to have Loftus continue to represent her. Even if the Court were to grant that this situation implicated the entrepreneurial aspects of the practice of law, the concepts of "adequate security" and "competent representation" are matters of legal opinion, not representations of fact concerning the law as it exists. *Winton*, 147 Vt. at 240, 515 A.2d at 373. Accordingly, the Court will grant the motion to dismiss.

III. *Conclusion*

Defendants' Motion to Dismiss Violation of Consumer Protection Act Claim (paper 28) is hereby GRANTED.