WASHINGTON ELECTRIC
COOPERATIVE, INC.,
Plaintiff,

v.

MASSACHUSETTS MUNICIPAL
WHOLESALE ELECTRIC CO.,
Defendant/Third–Plaintiff,

v.

PATERSON, WALKE & PRATT, P.C.,
et al., Third–Party Defendants.

NORTH ATTLEBORO ELECTRIC
DEPARTMENT, et al.,
Plaintiffs,

v.

VILLAGE OF LUDLOW,
et al., Defendants.

MASSACHUSETTS MUNICIPAL
WHOLESALE ELECTRIC
CO., Plaintiff,

v.

VILLAGE OF LUDLOW,
et al., Defendants.

Civ. Nos. 89–94, 5:91–270 and 5:91–271.

United States District Court,
D. Vermont.

Aug. 3, 1995.

Stephen Skill Ankuda, Parker & Ankuda, P.C., Springfield, VT, Gerald J. Caruso, Ferriter, Scobbo, Sikora, Caruso & Rodophele, P.C., Boston, MA, for plaintiffs North Attleborough Elec. Dept., Mansfield Mun. Elec. Dept., Georgetown Mun. Light Dept., Ashburnham Mun. Light Plant, Boylston Mun. Light Dept., Danvers Elec. Div., Groton Elec. Light Dept., Hingham Mun. Light Plant, Middleborough Gas and Elec. Dept., Paxton Mun. Light Dept., Shrewsbury's Elec. Light Plant, Sterling Mun. Light Dept., Templeton Mun. Light Plant, Wakefield Mun. Light Dept., West Boylston Lighting Plant, Hudson Light and Power Dept., Peabody Mun. Light Plant, Massachusetts Mun. Wholesale Elec. Co.

Robert B. Hemley, Gravel & Shea, Burlington, VT, Bert J. Capone, David A. Grossbaum, Peabody & Arnold, Boston, MA, for defendants Paterson, Walke & Pratt, P.C., Stephen Walke, Ralph W. Howe, III.

Joseph E. Frank, Paul Frank & Collins, P.C., Burlington, VT, for defendants Paterson, Gibson, Noble & Goodrich, Charles E. Gibson, Jr., Austin B. Noble, Julian R. Goodrich.

Leonard F. Wing, Jr., Ryan, Smith & Carbine Ltd., Rutland, VT, for defendant Martin Nitka.

Douglas Clark Pierson, Pierson, Wadhams, Quinn & Yates, Burlington, VT, for defendants Downs, Rachlin & Martin, William B. Piper.

Edward Vanderveer Schwiebert, Abell, Kenlan, Schwiebert & Hall, P.C., Rutland, VT, for defendant Kenneth Mason.

Robert A. Mello, The Law Office of Robert A. Mello, South Burlington, VT, for defendants Robert B. Page, James A. Fox.

## OPINION AND ORDER

BILLINGS, Senior District Judge.

The following matters bring these actions to the Court's attention:

1. Magistrate Judge Jerome J. Niedermeier's Report and Recommendation, filed March 31, 1995. Magistrate Niedermeier recommended that the Court grant the various motions for summary judgment submitted by the law firm Defendants in all three of the pending actions. Numerous objections and responses have been filed.

2. Magistrate Niedermeier's Order, filed March 31, 1995, denying a Motion by Plaintiff Washington Electric Cooperative

("WEC") to amend its crossclaim in action 89–CV–94. Two of the law firm Defendants have filed Objections and Statements of Appeal to that Order. WEC has filed a reply and statement in support of the Order.

3. Motions for Entry of Final Judgment filed in action 5:91–CV–270 by Village of Morrisville, et al.; Village of Ludlow, et. al.; Village of Stowe, et al.; and WEC, et al.

After a brief discussion of the facts of this case, we will discuss the Magistrate's Report and Recommendation, the Magistrate's Order and the Motions for Entry of Final Judgment seriatim.

### FACTUAL BACKGROUND [1]

In 1979, certain Vermont utilities ("Vermont Participants") entered into power sales agreements ("PSAs") with the Massachusetts Municipal Wholesale Electric Company ("MMWEC") [2] for shares of the power generating potential of New Hampshire's Seabrook nuclear facility. The PSAs were formulated as "take-or-pay" contracts. In other words, they required regular monthly payments by the Participants to MMWEC regardless of whether the utility actually received any power.

Prior to entering into the PSAs, the Vermont Participants had to qualify for participation in the venture. The Vermont Participants provided MMWEC's general and bond counsel with legal opinions to comply with this condition. In 1981 and 1985 MMWEC issued revenue bonds to finance the project. Again, the Vermont Participants were required to submit legal opinions demonstrating their authority to enter into the PSAs.[3] These legal opinions were provided by the law firm of Paterson, Gibson, Noble & Goodrich, ("PGNG") [4] the law firm of Downs, Rachlin & Martin and attorney William Piper, (collectively "DRM/Piper") [5] the law firm of Paterson, Walke & Pratt and attorneys Ralph W. Howe [6] and Stephen Walke (collectively "PWP"),[7] and attorney Martin Nitka ("Nitka").[8]

In 1988, the Vermont Supreme Court found the PSAs *ultra vires* and void *ab initio*. See *Vermont Dep't of Public Serv. v. Massachusetts Mun. Wholesale Elec. Co.* ("*MMWEC I*"), 151 Vt. 73, 558 A.2d 215 (1988), *cert. denied*, 493 U.S. 872, 110 S.Ct.

---

1. Familiarity with the facts of these three cases is assumed. Only those facts relevant to the matters currently at issue are reiterated here.

2. MMWEC is a public corporation and political subdivision of the Commonwealth of Massachusetts. It is a joint action agency through which municipalities and other electric utilities may act to plan, construct, acquire and/or finance supplies of electric capacity and energy.

3. Although MMWEC also issued bonds in 1982 and 1984, legal opinions were not obtained prior to these bond issues. MMWEC contends that it relied upon the opinions issued by the law firm defendants in 1981 in issuing these bonds.

4. John Paterson represented the Villages of Ludlow, Lyndonville, Morrisville, Northfield, Stowe and Swanton and the Washington Electric Cooperative. He issued five opinion letters: two in September 1979, addressed to MMWEC's general counsel (Begley, Ferriter, Brady & Lavelle); and three in June 1981, addressed to MMWEC's general counsel and bond counsel (Wood & Dawson). Paterson is now deceased.

5. Downs Rachlin represented the Vermont Electric Cooperative, Inc. On June 18, 1981, the firm issued one opinion letter, addressed to MMWEC's general and bond counsel.

6. Ralph W. Howe, III is a former employee of PWP. He is individually named in this action in connection with PWP's issuance of an opinion letter in February 1995. Howe has individually moved for summary judgment, contending that he did not participate in PWP's preparation of the 1985 opinion letter. At a hearing before the Magistrate on November 22, 1994, counsel for the Plaintiffs admitted that Plaintiffs have no evidence that Mr. Howe participated in the preparation of the opinion letter and agreed that a judgment could be entered in Howe's favor. *See* Excerpts from Transcript of Nov. 22, 1994 Hearing on Def.'s Mot. for Summ. J. Before U.S. Magistrate Niedermeier at 16. Accordingly, we GRANT Mr. Howe's Motion for Summary Judgment and remove him as a Defendant from this action.

7. Paterson, Walke & Pratt, P.C. represented the Washington Electric Cooperative and the villages of Lyndonville, Morrisville and Northfield. On February 14, 1985, the firm issued an opinion letter addressed to MMWEC's general and bond counsel.

8. Martin Nitka represented the Village of Ludlow Electric Light Department. On February 14, 1985, he issued an opinion letter addressed to MMWEC's general and bond counsel.

202, 107 L.Ed.2d 155 (1989). The Vermont Supreme Court provided two grounds to justify its holding. First, the court determined that 30 V.S.A. § 4002,[9] which authorizes Vermont utilities to participate together in the purchase of "supplies of capacity and energy from other utilities," did not empower the Vermont Participants to enter into the PSAs by which they obtained shares of "project capability." *Id.* at 80, 558 A.2d 215. As a second ground for its holding, the Vermont Supreme Court relied on the principle of nondelegation. *Id.* at 81, 558 A.2d 215. Quoting *Thompson v. Smith,* the court observed that it "has long adhered to the 'deep-rooted principle of law that the delegate of power from the sovereign cannot without permission recommit to another agent or agency the trust imposed upon its judgment and discretion.'" *Id.* (quoting 119 Vt. 488, 501, 129 A.2d 638 (1957)). The court ruled that the PSAs violated the nondelegation doctrine by redelegating the Vermont Participants' spending powers and by limiting the future exercise of discretion and judgment by their legislative bodies.[10] *Id.* at 82, 558 A.2d 215.

Adhering to the Vermont Supreme Court's opinion in *MMWEC I,* the Vermont Participants ceased making payments to MMWEC under the PSAs. As a result of step-up provisions in the contracts, MMWEC and the individual Massachusetts utilities who were also participating in the project ("Massachusetts Participants") were obligated to assume the Vermont Participants' share of the payments.

WEC has filed an action in contract against MMWEC for return of the funds paid pursuant to the PSAs. (89–CV–94). Within that action, WEC has filed a cross-claim against the law firms who issued the legal opinions. MMWEC and the Massachusetts Participants brought separate actions

seeking compensatory damages against the Vermont Participants, their directors, and the various attorneys and law firms that issued the opinions. (91–CV–270 and 91–CV–271). In this Opinion and Order, we focus on the actions brought by WEC, MMWEC and the Massachusetts Participants against the lawyers who represented the Vermont Participants. These actions sought damages on claims of negligence, negligent misrepresentation, breach of warranty, and indemnity and contribution. In his Report and Recommendation, the Magistrate granted summary judgment to the law firm Defendants, concluding that neither the negligence nor the indemnity and contribution claims could be sustained.

## DISCUSSION

### I. The Magistrate's Report and Recommendation

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to the Magistrate to conduct hearings and to submit to the Court recommendations for the disposition of the law firm Defendants' Motions for Summary Judgment. Section 636(b)(1) provides that the Court:

> shall make a de novo determination of those portions of the [Magistrate's] report ... [and] recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

*See also* Fed.R.Civ.P. 72. Based on this standard, we review the Magistrate's Report and Recommendation *de novo.*

---

9. 30 V.S.A. § 4002 provides, in pertinent part:

Any cooperative or municipal electric utility shall have:

.　.　.　.　.

(2) authority to act in participation with other such utilities in arranging for the purchase of supplies of capacity and energy from other utilities, either within or without the state of Vermont, including purchases from private

electric utilities, municipal electric utilities, cooperatives, associations of utilities, or public authorities.

10. The Vermont Supreme Court was concerned that the PSAs gave MMWEC "exclusive control over the magnitude of the [Vermont] participants' monthly payments and over the duration of these payments." *MMWEC I,* 151 Vt. at 83, 558 A.2d 215.

The lawyer Defendants have advanced a number of different arguments in support of their various Motions for Summary Judgment. Summary judgment is appropriate when the Court finds that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The initial burden of demonstrating that no genuine issue of material fact exists rests on the party seeking summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The burden then shifts to the opposing party, who may not rest on its pleading but must present "significant probative evidence" demonstrating that a factual dispute exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The Court must view these materials and draw all inferences in the light most favorable to the non-movant. *Id.* at 255, 106 S.Ct. at 2513–14.

## B. Plaintiffs' Negligence Claims

In their Motions for Summary Judgment, the attorneys contended that because no attorney-client relationship existed between the lawyer Defendants and either MMWEC or the Massachusetts Participants, the law firms cannot be considered liable in this action.[11] The Magistrate agreed, examining the question under both Vermont and Massachusetts law.[12]

As the Magistrate indicated, in order to succeed on a claim of attorney negligence or "malpractice" in Vermont, a party must demonstrate the existence of an attorney-client relationship. *Brown v. Kelly,* 140 Vt. 336, 338, 437 A.2d 1103 (1981). *See also Bresette v. Knapp,* 121 Vt. 376, 380, 159 A.2d 329 (1960) ("not only must the relationship of attorney and client have existed between the parties, but this relationship must also have been professional in character"); *Howard Bank, N.A. v. Estate of Pope,* 156 Vt. 537, 539, 593 A.2d 471 (1991) (declining to reach the issue of whether a nonclient may sue an attorney). No dispute surrounds the fact that MMWEC and the Massachusetts Participants were not the clients of the lawyer Defendants. Accordingly, the Magistrate recommended that the law firms were entitled to summary judgment on Plaintiffs' negligence claim.

In their Consolidated Objections, MMWEC and the Massachusetts Participants urge the Court to reject the Magistrate's conclusions with respect to Vermont law by relying on the 1993 opinion of a Vermont trial court which expanded Ver-

11. In their Consolidated Objections, MMWEC and the Massachusetts Participants assert that the Court has already decided the attorney-client relationship issue by denying the motion for summary judgment of Martin Nitka in our Order of September 13, 1993. According to Plaintiffs, the law of the case doctrine prevents the Court from considering this issue again. We reject this argument. The September 13, 1993, Order rejected the Magistrate's recommendation that Nitka's Motion for Summary Judgment should be granted because MMWEC's claim was barred by the six year statute of limitations. This Court determined that genuine issues of material fact existed as to when the statute of limitations period began to run. The Court never considered Nitka's argument that Plaintiffs had no standing to bring this action.

12. Because this action invokes the Court's diversity jurisdiction, we consult Vermont's choice of law rules to determine which state's substantive law applies to this action. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Banker v. Ni-*

*ghswander, Martin & Mitchell,* 37 F.3d 866, 871 (2d Cir.1994). In analyzing the Plaintiffs' claims, the Magistrate observed that he need not engage in a choice of law inquiry where the result would be the same no matter which law applied. For purposes of clarity, we now rule that Vermont law applies to the tort claims in this action.

In tort actions, Vermont employs the *lex loci delicti* rule. Accordingly, we must apply the law of the jurisdiction where the tort occurred. *Goldman v. Beaudry,* 122 Vt. 299, 301, 170 A.2d 636 (1961). Under this rule, the situs of the tort is "the state where the last event necessary to make an actor liable for an alleged tort takes place." *Marra v. Bushee,* 317 F.Supp. 972, 973 (D.Vt.1970) (citing *Restatement of Conflict of Laws* § 377 (1934)), *rev'd on other grounds,* 447 F.2d 1282 (2d Cir.1971). The legal opinions at issue in the instant case were drafted and issued by lawyers practicing in the State of Vermont. Any negligent acts that took place in the preparation of these documents clearly took place in Vermont. Thus, only Vermont law applies.

mont's privity requirement. *See Van Vlandren v. Paul, Frank & Collins, Inc.,* No. S1071–92 CnC, slip. op. at 4–5 (Chittenden Sup.Ct. Nov. 9, 1993). In *Vlandren,* the court determined that an attorney who prepared a Certificate of Title for a mortgagor was liable to the mortgagee bank where the attorney knew that the bank would rely on the Certificate of Title in extending the mortgage. *Id.* MMWEC and the Massachusetts Participants assert that the situation currently before the Court is comparable to that in *Vlandren.* They argue that the lawyer Defendants were not simply advising the Vermont Participants on a particular course of conduct. Rather, the Plaintiffs argue, the Defendants had direct interaction with MMWEC and the Massachusetts Participants and, hence, privity. Moreover, they argue, the attorney Defendants knew that MMWEC and the Massachusetts Participants would be relying on their opinion letters in determining whether to enter into PSAs with the Vermont Participants.

MMWEC and the Massachusetts Participants further observe that a number of states have expanded privity beyond the attorney-client relationship. *See, e.g., Goerlich v. Courtney Indus., Inc.,* 84 Md.App. 660, 581 A.2d 825, 827 (1990) ("[w]here the third party can allege and prove that the client intended him to be a third party beneficiary of the attorney's services, and where his interests are identical to those of the client, a suit for legal malpractice may be maintained by that third party.") (citing *Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618 (1985)), *cert. denied,* 322 Md. 130, 586 A.2d 13 (1991); *Vanguard Prod., Inc. v. Martin,* 894 F.2d 375, 376 (10th Cir.1990) (under Oklahoma law, attorneys owe common law duty of ordinary care and workmanlike performance to those nonclients whom attorney can reasonably foresee will rely on attorney's advice); 1 Ronald E. Mallen and Jeffrey Smith, *Legal Malpractice,* § 7.10 (3d ed. 1989) (hereinafter "Mallen & Smith") (discussing expansion of privity under beneficiary and foreseeability tests). Thus, MMWEC and the Massachusetts Participants assert that if this issue were presented to the Vermont Supreme Court, the court would expand the privity concept.

In diversity actions, the Court is bound to follow the law as set forth by Vermont's highest court unless "there are very persuasive grounds for believing that the state's highest court would no longer adhere" to its own precedent. *Bower v. Weisman,* 650 F.Supp. 1415, 1423 (S.D.N.Y. 1986) (quoting 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4507, at 92 (1982)). *See also Meredith v. City of Winter Haven,* 320 U.S. 228, 234, 64 S.Ct. 7, 10–11, 88 L.Ed. 9 (1943). *Compare Roy v. Bolens Corp.,* 629 F.Supp. 1070, 1072 (D.Mass.1986) (where neither state supreme nor appellate court have directly addressed issue, it is appropriate to look to trial court decisions). Assuming, without deciding, that the holding in *Vlandren* is applicable to the situation in the case at bar,[13] we nevertheless conclude that Plaintiffs have failed to provide the Court with "persuasive grounds" to determine that the Vermont Supreme Court would reject its requirement of an attorney-client relationship in a cause of action for attorney negligence. Although we agree that a number of states have abandoned the privity requirement in some instances, there remains "an abundance of authority for the proposition that, generally, only the client can sue the attorney for a negligent act or omission." 1 Mallen & Smith, § 7.10 at 376. Absent a clear determination by the Vermont Supreme Court that it intends to abandon its privity requirement, we adhere to the law as it currently stands in the state.

There is no dispute over the fact that Plaintiffs were not the clients of the lawyer Defendants in the transaction at issue in this case. Accordingly, as a matter of law, we agree with the Magistrate that Plaintiffs have no standing to bring an action against

---

**13.** Defendant PGNG asserts that *Vlandren* is inapplicable to the case at bar. In *Vlandren,* the attorney sent his Certificate of Title directly to the bank. In the instant case, however, the lawyer Defendants' opinions were not sent directly to either MMWEC or the Massachusetts Participants. Rather, the letters were addressed to MMWEC's general and bond counsel. Thus, according to PGNG, under the doctrine set forth in *Vlandren,* only MMWEC's counsel could rely on the opinions and could have legal rights under them.

the lawyer Defendants for negligence. Thus, we ADOPT the Magistrate's Report and Recommendation with respect to its conclusions on the attorney negligence claim.

## C. Plaintiffs' Contribution and Indemnity Claims

In their various Complaints, MMWEC and the Massachusetts Participants asserted that in the event they were required to return funds to the Vermont Participants, they have an implied right of indemnity and contribution against the law firms. The law firms and the Magistrate disagreed.

In his Report and Recommendation, the Magistrate concluded that the law of indemnity and contribution in both Vermont and Massachusetts requires joint tortfeasors. Because the claims of the Vermont Participants against the Massachusetts Participants are based on contract and quasi-contract, the Magistrate concluded that MMWEC and the Massachusetts Participants could not be considered joint tortfeasors with the law firms.

In their Consolidated Objections, MMWEC and the Massachusetts Participants argue that the Magistrate erred in recommending the dismissal of the contribution and indemnity claims. They assert that the Magistrate's factual findings do not withstand scrutiny because they ignore the counterclaims in tort by MMWEC against the Vermont Participants in addition to their lawyers. According to the Plaintiffs, both lawyers and the Vermont Participants misrepresented their authority. Thus, Plaintiffs argue, they are joint tortfeasors. *See also* § 886B(2)(c) of Restatement (Second) of Torts (1977).[14]

Absent statutory authorization, Vermont law precludes contribution among joint tortfeasors. *Swett v. Haig's, Inc.*, —— Vt. ——, 663 A.2d 930 (Vt.1995); *Peters v. Mindell*, 159 Vt. 424, 427, 620 A.2d 1268 (1992).

As for the issue of indemnity, we agree with the Plaintiffs that the Magistrate oversimplified Vermont's law by merely indicating that because the Vermont Participants' original action was brought in contract, the parties at issue here could not be "joint tortfeasors." *See Digregorio v. Champlain Valley Fruit Co., Inc.*, 127 Vt. 562, 565, 255 A.2d 183 (1969) (in applying the law of indemnity, "[w]hether the original action was brought in contract or tort is of no consequence"). Nevertheless, for the reasons set forth below, we agree with the Magistrate's end result.

"[I]ndemnity is a right accruing to a party who, without active fault, has been compelled by some legal obligation, such as a finding of vicarious liability, to pay damages occasioned by the negligence of another." *Morris v. American Motors Corp.*, 142 Vt. 566, 576, 459 A.2d 968 (1983). Indemnity shifts the entire loss onto the real wrongdoer. *Id.* at 577, 459 A.2d 968; *Viens v. Anthony Co.*, 282 F.Supp. 983, 985 n. 2 (D.Vt. 1968). Vermont recognizes a right of indemnity if: "(1) there is an express agreement by one party to indemnify the other, or (2) the circumstances are such that the law will imply such an undertaking." *Peters*, 159 Vt. at 427, 620 A.2d 1268 (citing *Bardwell Motor Inn, Inc. v. Accavallo*, 135 Vt. 571, 572, 381 A.2d 1061 (1977)). In the instant case, there is no express agreement for indemnification between MMWEC/Massachusetts Participants and the lawyer Defendants. Accordingly, we examine whether a legal relationship exists between the parties such that the lawyer Defendants may be required to indemnify the Plaintiffs. *Peters*, 159 Vt. at 428, 620 A.2d 1268; *Hiltz v. John Deere Indus. Equip. Co.*, 146 Vt. 12, 14, 497 A.2d 748 (1985).

In the past, the Vermont Supreme Court has required a direct legal relationship between the indemnitor and indemnitee like that of manufacturer-seller or contractor-

---

**14.** Section 886B provides, in pertinent part:

(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

(2) Instances in which indemnity is granted under this principle include the following:

. . . . .

(c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied.

owner when recognizing an implied right of indemnity. *See Morris*, 142 Vt. at 575–76, 459 A.2d 968 (strictly liable automobile manufacturer entitled to indemnification from manufacturer of defective part); *Bardwell*, 135 Vt. at 574, 381 A.2d 1061 (hotel owner entitled to indemnity from contractor who created hazard in conducting repairs); *Digregorio*, 127 Vt. at 565, 255 A.2d 183 (retailer of defective fruit entitled to indemnity from wholesaler). In *Hiltz*, however, the Vermont Supreme Court signalled that there were limits on the scope of indemnity. The *Hiltz* court declined to require the purchaser of a product to indemnify the manufacturer. 146 Vt. at 15, 497 A.2d 748. The Court reasoned that "under Vermont law, one is not entitled to indemnity from a joint tortfeasor merely because one may be free from negligence, or another is more at fault." *Id.*

Applying these principles to the instant action, we note that there is simply no direct legal relationship between the Plaintiffs and the lawyer Defendants such that a right to indemnity exists. As we have previously observed, no privity existed between the Plaintiffs and Defendants. The legal opinions submitted by the lawyer Defendants to MMWEC's counsel were presented on behalf of the Vermont Participants. The lawyer Defendants never represented the Plaintiffs. Under these circumstances, we do not believe that Vermont law implies an obligation to indemnify.[15] Accordingly, we agree with the Magistrate's conclusion that summary judgment should be granted to the lawyer Defendants on Plaintiffs' claims of indemnity and contribution.

### D. Defendants' Additional Ground for Summary Judgment—Judicial Discretion

Because the Magistrate found the issues of legal malpractice and indemnity and contri-

bution to be dispositive of Plaintiffs' action, he did not reach any other arguments made by the lawyer Defendants. We believe that this conclusion was erroneous. Plaintiffs' claims of negligent misrepresentation and breach of warranty survive the Magistrate's ruling, and are discussed at section III, herein. Nevertheless, we find that the lawyer Defendants' judicial discretion argument is dispositive of all claims raised by the Plaintiffs against all lawyer Defendants except PGNG.

■ Except for the two letters issued by PGNG in 1979, each of the relevant opinion letters issued by the lawyer Defendants contained the following language, indicating that their opinions were subject to judicial discretion:

> It is to be understood that the obligations of the Participant[s] under the Agreements and the enforceability thereof may be subject to judicial discretion, the valid exercise of the sovereign police powers of the Commonwealth of Massachusetts or the State of Vermont and of the constitutional powers of the United States of America, and valid bankruptcy, insolvency, reorganization, moratorium and other laws affecting creditors rights.

The lawyer Defendants assert that their use of this language absolves them of any liability in this action.

■ In Vermont, an exculpatory clause is traditionally disfavored. *Colgan v. Agway, Inc.*, 150 Vt. 373, 375, 553 A.2d 143 (1988). Accordingly, the language of the clause is construed strictly against its drafter. *Douglass v. Skiing Standards, Inc.*, 142 Vt. 634, 636, 459 A.2d 97 (1983). Nevertheless, where the language of the contract is clear, the parties are bound by the common

---

15. Even assuming that the Vermont Supreme Court would consider the relationship between the parties sufficient to impose indemnity, we still believe that no such indemnity would be imposed here because the alleged harms committed by MMWEC and the lawyer Defendants are not the same. Although WEC has filed claims against both MMWEC and the lawyer Defendants, the claims against them are entirely separate and distinct. In the claims against MMWEC, WEC alleged that because the Ver-

mont Supreme Court declared the PSAs to be void *ab initio*, WEC is entitled to recoup the payments it made to MMWEC under the contracts. WEC's crossclaims against the lawyer Defendants, however, allege claims of negligence, negligent misrepresentation, and contribution and indemnity. These harms are separate and distinct and cannot be considered the "same harm" for purposes of indemnity. Restatement (Second) of Torts § 886B(2)(C) (1977).

meaning of their words and the Court need not engage in fanciful alternative constructions. *Id.* at 636, 459 A.2d 97.

Plaintiffs assert that use of a clause like the one at issue here is not a qualification of the validity of the contract, but rather speaks to enforceability. To support this argument, Plaintiffs point the Court to the National Association of Bond Lawyers' *Model Bond Opinion,* printed in 15 Urb.Law. 985, 998 (1983), and to two law review articles. *See* Scott FitzGibbon & Donald W. Glazer, *Legal Opinions in Corporate Transactions: The Opinion on Agreements and Instruments,* 12 J.Corp.L. 657, 686 (1987); Frank E. Rabb et al., *Legal Opinions to Third Parties in Corporate Transactions,* 32 Bus.Law. 553, 564 (1977). Although the Court agrees with the Plaintiffs that the clauses contained in the cited sources were intended to speak to equitable enforcement of the contracts that were the subject of the opinion letters, the language used by the lawyer Defendants in the opinion letters at issue here speaks beyond mere enforceability.

The lawyer Defendants specifically stated that: "the *obligations of the Participant[s]* under the Agreements *and the enforceability thereof* may be subject to judicial discretion." (emphasis added). This language is clear and unambiguous. There is no doubt that the drafters referred to the "obligations" under the PSAs in addition to their enforcement. In other words, the clause indicates that the validity of the PSAs is subject to judicial discretion. We reject Plaintiffs' efforts to recharacterize the plain meaning of this language by referring the Court to interpretations of language which refers only to enforceability.[16]

Plaintiffs assert that our interpretation "results in an absurdity—the opinion would in effect be stating the agreements are valid unless a court deems them invalid." *See* Consolidated Mem.Opp. to PWP's Mot. for Summ.J., filed Mar. 17, 1993, at 23. We conclude, however, that although the opinion letters attested to the status of the law at the time they were rendered, the lawyer Defendants disclaimed liability for future changes in the law. This disclaimer is consistent with accepted legal principles. *See* 1 Mallen & Smith, § 14.1 at 811–12 ("[t]he law is not an exact science. What an attorney thinks the law is today may not be what a court decides tomorrow. . . . Because of those concerns, the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized.") An attorney cannot be expected to predict the actions that a court will take in the future. Hence, a clause disclaiming liability for future judicial discretion is valid. The judicial discretion qualification protects the opinion-giver from blame for the uncertain future of the law.

In light of our conclusions herein, the lawyer Defendants, other than PGNG, may not

16. The judicial discretion clause offered in the *Model Bond Opinion* is as follows:

It is to be understood that the rights of the holders of the Bonds and the enforceability thereof may be subject to bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting creditors' rights heretofore or hereafter enacted to the extend constitutionally applicable and that their enforcement may also be subject to the exercise of judicial discretion in appropriate cases.

15 Urb.Law. at 988. This language speaks to "rights" and "enforceability" only. The clause to which Plaintiffs refer us in *Legal Opinions to Third Parties* does not contain a judicial discretion reference. Rather, the authors observe that the phrase "[t]he agreement is a valid, enforceable and binding obligation of the Company . . . cover[s] the non-availability of certain defenses of the Company to an action on the Agreement, e.g. lack of corporate power to contract, noncompliance with any statute of frauds and non-

contravention of a statute or common law rule declaring an essential term in the Agreement void on its face." 32 Bus.Law at 564. Indeed, the opinion letters issued by the lawyer Defendants each contained a paragraph indicating that the agreements were valid, enforceable, and binding. These paragraphs were separate from the judicial discretion clause at issue here. Finally, in *Legal Opinions in Corporate Transactions,* the language which the authors observe is limited to enforceability of the agreement provides:

Our opinion that the Agreement and the Notes are enforceable each in accordance with their respective terms is subject to the qualifications that . . . the availability of the remedy of specific enforcement, of injunctive relief or of other equitable relief is subject to the discretion of the court before which any proceeding therefor may be brought.

12 J.Corp.L. at 686. Again, we note that this language speaks solely to enforceability.

be held liable to MMWEC and the Massachusetts Participants for the opinions contained in the disputed letters. The judicial discretion clause contained in these letters absolves the lawyer Defendants of any potential liability on the Plaintiffs' remaining claims. However, because the letters issued by PGNG in 1979 did not contain the judicial discretion clause, PGNG remains potentially liable to the Plaintiffs for the relevant opinion letters rendered in 1979.[17]

### E. The Remaining Claims Against PGNG

As aforementioned, the Magistrate found the issues of legal malpractice and indemnity and contribution to be dispositive of Plaintiffs' claims against the lawyer Defendants. Accordingly, he did not reach any other causes of action. We have determined that PGNG is the sole law firm Defendant that remains liable in this action, on the basis of the opinion letters it issued in 1979. In their Consolidated Objections, MMWEC and the Massachusetts Participants assert that their claims of negligent misrepresentation and breach of warranty[18] survive the Magistrate's recommendations. We agree and address these claims herein.

#### 1. Negligent Misrepresentation

Although the Magistrate believed that his ruling with respect to Plaintiffs' negligence claim also disposed of Plaintiffs' claim for negligent misrepresentation, we disagree. Negligent misrepresentation claims must be treated separately from straight negligence claims. See Vermont Plastics, Inc. v. Brine, Inc., 824 F.Supp. 444, 451 (D.Vt.1993) (Parker, J.) (under Vermont law, negligence and negligent misrepresentation are separate theories of recovery).

The tort of negligent misrepresentation has the following elements:

One who, in the course of business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977). See also Silva v. Stevens, 156 Vt. 94, 108, 589 A.2d 852 (1991) (adopting Restatement). Unlike a claim for attorney malpractice, the cause of action for negligent misrepresentation does not require an attorney-client relationship. See Williams & Sons Erectors, Inc. v. South Carolina Steel Corp., 983 F.2d 1176, 1181 (2d Cir.1993) (noting that Restatement has "lower threshold for a plaintiff to meet when attempting to hold a defendant liable for information negligently supplied for the guidance of others"); Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A., 892 P.2d 230, 236 (Colo. 1995) (en banc) (although Colorado law requires attorney-client relationship for legal malpractice actions, "privity is not a necessary element of a claim for negligent misrepresentation"). Accordingly, despite the absence of an attorney-client relationship, the Plaintiffs' claim for negligent misrepresentation survives our dismissal of their straight negligence claim. Because the parties have not properly briefed the issues surrounding Plaintiffs' negligent misrepresentation claim, however, we now remand this claim to the Magistrate for further Motions and consideration to determine if PGNG may be held liable on the negligent misrepresentation claim.

#### 2. Breach of Warranty

As indicated above, Plaintiffs' Complaints also make claims for breach of war-

---

**17.** PGNG asserts that because the judicial discretion clause was included in its 1981 opinion letters those letters serve to supersede the 1979 letters. We reject this contention. Although the 1979 letters were issued with respect to the initial negotiation of the PSAs, the 1981 letters concerned MMWEC's 1981 bond issue. Under these circumstances, we cannot say, as a matter of fact, that the 1981 letters issued by PGNG served to displace the 1979 letters. Accordingly,

the 1979 letters issued by PGNG are not subject to the immunity created by the use of the judicial discretion clause.

**18.** Counts IV and VI in 89–94 (negligent misrepresentation); Counts X and XI in 91–270 (negligent misrepresentation and breach of warranty); and Counts VIII and IX in 91–271 (negligent misrepresentation and breach of warranty).

ranty. We agree with the Plaintiffs that the dismissal of their claim for negligence and contribution and indemnity does not affect their breach of warranty claim. Nevertheless, in their response, PGNG asserts that the claim is frivolous. We consider their arguments here.

■ A warranty is defined as "[a] promise that a proposition of fact is true." *Black's Law Dictionary* 1423 (5th ed. 1979). Plaintiffs assert that statements contained within each of the opinion letters by the Defendants are factual representations of the authority of their respective clients to enter into the PSAs and the research undertaken to support the opinion. Thus, MMWEC and the Massachusetts Participants assert, the lawyers' "warranties" are actionable for breach.

We have searched in vain for a case in which an attorney has been sued successfully on a breach of warranty theory for representations made in an "opinion letter." Based on their very title, these documents defy Plaintiffs' efforts to characterize them as factual guarantees. As the American Bar Association has stated:

> A third-party legal opinion is an expression of professional judgment on the legal issues explicitly addressed. By rendering a professional opinion, the opinion giver does not become an insurer or guarantor of the expression of professional judgment, of the transaction or of the future performance of the client. Nor does the rendering of an opinion guarantee the outcome of any legal dispute that may arise out of the transaction.

American Bar Association, *Third-party Legal Opinion Report*, 47 Bus.Law. 167, 171 (1991).

In asserting that their cause of action for breach of warranty is viable, Plaintiffs point

us to a Vermont Supreme Court case in which the court, referring to causes of action for fraudulent misrepresentation and consumer fraud, has noted that the line that separates fact from legal opinion is somewhat blurred: "Where a representation as to a matter of law is essentially a matter of fact, the recipient may rely on it in a business transaction to the same extent as the recipient would other facts." *See Winton v. Johnson & Dix Fuel Corp.*, 147 Vt. 236, 241, 515 A.2d 371 (1986).[19] Plaintiffs assert that the representations made by the attorney Defendants were essentially representations of fact.

Even if an action for breach of warranty could be brought against an attorney on the basis of a third-party opinion letter, and further assuming that case law referring to fraud could be applied to a cause of action for breach of warranty, we find that such a cause of action cannot be asserted by Plaintiffs here. As we have already determined, it is undisputed that Plaintiffs were not the clients of the lawyer Defendants. Vermont law precludes an action in negligence by a nonclient against an attorney. We believe that this principle extends to breach of warranty claims. Indeed, even the Maryland Supreme Court, which has expanded its privity requirement to include an attorney's intended beneficiaries, has declined to extend an action for breach of warranty in the absence of either a warranty established by law or a contractual relationship. *Flaherty*, 492 A.2d at 627. Plaintiffs do not assert that they are statutorily entitled to bring this cause of action against PGNG. Nor can they point to any evidence of a contractual relationship with the lawyer Defendants. Accordingly, as a matter of law, we conclude that Plaintiffs' cause of action for breach of

---

**19.** In making this distinction, the *Winton* court observed:

> An important distinction must be made between representations of legal *opinions* and representations of *fact* relating to the law as it exists.... The first involves the legal meaning and effect of a statute, court ruling, document, instrument or other source of law, while the latter involves statements that imply the existence of accurate and readily ascertainable facts that either concern the law or have legal

significance, but which are not part of the law themselves.... These fact-representation[s] ... have as their common thread that the representor generally states or implies that the matter asserted is readily ascertainable, is not subject to specialized or expert interpretation, and does not depend on judgment or speculation about future events as fundamental to the accuracy of the assertion.

147 Vt. at 240, 515 A.2d 371.

warranty against PGNG is not viable in the State of Vermont.

In light of the foregoing, we DISMISS Count XI in case number 5:91–CV–270; and Count IX in case number 5:91–CV–271.[20]

### 3. The Judgmental Immunity Defense

PGNG asserts that it is immune from liability for its actions in this matter pursuant to the judgmental immunity doctrine. Under the judgmental immunity doctrine, "[a]n attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment or for a mistake in a point of law which has not been settled by the court of last resort in his state and on which reasonable doubt may be entertained by well-informed lawyers." *Hodges v. Carter*, 239 N.C. 517, 80 S.E.2d 144, 146 (1954) (cited approvingly in *Russo v. Griffin*, 147 Vt. 20, 25, 510 A.2d 436 (1986)). *See also Halvorsen v. Ferguson*, 46 Wash.App. 708, 735 P.2d 675, 681 (1986) (attorney not liable for errors in judgment or trial tactics where attorney's error involves uncertain, unsettled, or debatable proposition of law); 1 Mallen & Smith, § 14.8, at 829 (in the absence of precedent, authoritative analysis and meaningful debate, attorney not liable for relying on judgment as the only reliable tool to resolve issue); *Davis v. Damrell*, 119 Cal.App.3d 883, 174 Cal.Rptr. 257, 259 (1981). The determination of whether the law was unsettled at the time the attorney rendered his or her opinion is a question of law. *Smith v. Lewis*, 13 Cal.3d 349, 118 Cal.Rptr. 621, 627, 530 P.2d 589, 595 (1975).

PGNG asserts that the Court should adopt the Magistrate's Report and Recommendation on the basis of the judicial immunity doctrine. They argue that the case law in existence in Vermont regarding the validity of take-or-pay contracts in the utility area was unsettled at the time they rendered their opinions.

Even though an attorney will be absolved of liability in cases where the law is unsettled, the lawyer must nevertheless show "that he performed reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem." *Smith v. Lewis*, 118 Cal.Rptr. at 627, 530 P.2d at 595. *See also Copeland Lumber Yards v. Kincaid*, 69 Or.App. 35, 684 P.2d 13, 14, *rev. denied*, 298 Or. 37, 688 P.2d 845 (1984); *Halvorsen*, 735 P.2d at 681. Although the determination of whether the law was unsettled is a question of law, the latter determination, as to whether the extent of the attorney's research was appropriate, is a question of fact. *See Halvorsen*, 735 P.2d at 681; *Davis*, 119 Cal. App.3d at 888, 174 Cal.Rptr. 257.

Based on the foregoing, we remand this issue to the Magistrate for determination of whether the judicial immunity defense applies to the Plaintiffs' surviving claim of negligent misrepresentation against PGNG on the basis of the 1979 opinion letters.

### II. The Magistrate's Order of March 31, 1995

In its Motion to Amend, WEC sought to "clarify" its crossclaim to indicate that WEC's claims against the law firms are independent claims, not indemnification claims dependent on the outcome of MMWEC's counterclaim against WEC.[21] The Magistrate denied WEC's motion, determining that WEC had stated independent claims against the law firms in the original pleading and thus no amendment was necessary. PGNG and PWP object and appeal to the Order pursuant to 28 U.S.C. § 636(b)(1)(a), Fed.R.Civ.P. 72(a) and Local Rule 1(D)(1)(a).

PGNG objects to the Magistrate's conclusion that WEC has stated an independent crossclaim against the PGNG Defendants and other lawyer defendants. Instead, PGNG argues, WEC's crossclaim against the lawyers was one of indemnity, in the event WEC was held liable to MMWEC under the

---

**20.** No breach of warranty claim was made against PGNG in case number 89–CV–94.

**21.** MMWEC's claims against WEC were dismissed by Order of the Court dated September 13, 1993.

MMWEC counterclaim. *See* Answer to Counterclaim of MMWEC and Crossclaim of WEC. PGNG contends that it is clearly erroneous to read the original crossclaim otherwise, and it is contrary to law to equate a claim for indemnity with an independent crossclaim. PGNG asks that the Court provide this clarification, and further requests that the Court deny the Motion to Amend, arguing that it is tardy, unnecessary and would require further delay to the case as additional discovery would be necessary. *See* 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1488 at 682–92 nn. 28–30.

WEC responds that its crossclaim against the lawyer Defendants was set forth in six counts. Although the first two counts sought indemnification, the latter four counts made claims of negligence and negligent misrepresentation against the Defendant lawyers. In its request for damages, WEC asserted that as a result of the lawyer Defendants' negligence, "WEC has suffered great harm and injury and money damages in amounts yet to be determined but not less than the amounts of any claims which MMWEC recovers from WEC on any of its counterclaim it has asserted against WEC." Crossclaim ¶ 45.

Upon review of WEC's Crossclaim, the Court concludes that the Magistrate's ruling was correct. No clarification is necessary. Accordingly, we AFFIRM the Magistrate and DENY WEC's Motion to Amend.

### III. The Vermont Participants' Motions for Entry of Final Judgment

■ On September 13, 1993 the Court issued an Opinion and Order granting the respective motions to dismiss of the Vermont Participants against whom suit was brought by the Massachusetts Participants (91–CV–270). The following parties have filed Motions for Entry of Final Judgment, which are now pending:

A. Village of Morrisville, Robert B. Page and James C. Fox, filed March 28, 1995;

B. Village of Ludlow and its Electric Department, Village of Lyndonville and its Electric Department, and Village of Northfield and its Electric Department, and Dean Brown, Donald Ellison, George Dunnett, John Collins, Jr., Kenneth C. Mason and Edgar C. Gadbois, filed March 30, 1995;

C. Village of Stowe, filed May 3, 1995; and

D. WEC, Gordon J. Booth, Robert O. Toombs and Frederick Ladue, filed May 5, 1995.

On June 19, 1995, Plaintiffs filed a Motion to Extend Time to respond to the Vermont Participants' respective Motions for Entry of Final Judgment. The Court granted Plaintiffs' Motion and they were ordered to file their response by July 30, 1995. Plaintiffs did not file timely opposition. Accordingly, we proceed to consider the Vermont Participants' Motions.

■ When there are multiple parties involved in a case, Fed.R.Civ.P. 54(b) grants the Court authority to direct the entry of final judgment as to fewer than all of the parties upon an express determination that there is no just reason for delay.[22] Although courts have the discretion to decide whether or not to grant a Rule 54(b) motion, the Second Circuit has made clear that "(t)he district court's discretion is to be exercised sparingly in light of the 'historic federal policy against piecemeal appeals.'" *Hogan v. Consolidated Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir.1992) (citing *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1464–65, 64 L.Ed.2d 1 (1980)). The party seeking entry of final judgment must make "some showing" as to why they ought to overcome the general rule that no appeal should be heard until the entire case has been completed. *Arlinghaus v. Ritenour,*

---

**22.** Rule 54(b) provides in pertinent part:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

543 F.2d 461, 464 (2d Cir.1976) ("required determination 'that there is no just reason for delay' ought not to be made as a matter of rote ... [as] the determination involves 'weighing the overall policy against piecemeal appeals against whatever exigencies the case at hand may present.... [and thus] 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel.' ") (quoting *Panichella v. Pennsylvania R.R. Co.,* 252 F.2d 452, 455 (3d Cir.1958)), *aff'd* 622 F.2d 629 (2d Cir.), *cert. denied,* 449 U.S. 1013, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980). Thus, there must be a showing of "special circumstances indicating that adherence to the normal and federally preferred practice of postponing appeal until after a final judgment has been entered, disposing of all the claims of all the parties, will cause unusual hardship or work an injustice." *Hogan,* 961 F.2d at 1026.

The Defendants have not presented any evidence of the unusual hardship or injustice that would justify entering final judgment now rather than at the completion of the entire litigation. We find that this case presents no special circumstances such that entry of final judgment at this juncture is either necessary or appropriate. Accordingly, the above-referenced Motions for Entry of Final Judgment are hereby DENIED.

### *CONCLUSION*

In light of the foregoing, we hereby

1. ADOPT the Magistrate's Report and Recommendation IN PART. We further rule that the lawyer Defendants' judicial discretion argument is dispositive of the remaining claims against all lawyer Defendants except PGNG. PGNG remains potentially liable with respect to the 1979 opinion letters only. We remand this matter to the Magistrate for further consideration of arguments with respect to Plaintiffs' claim of negligent misrepresentation as well as PGNG's assertion of the judgmental immunity defense. Accordingly, we GRANT the following motions for summary judgment submitted by Defendants PWP, DRM/Piper and Nitka:

*No. 89–CV–94:* Papers 168, 169, 177, and 219.

*No. 5:91–CV–270:* Papers 118, 132, 142, 151, 166, 169, 177, 183, and 184.

*No. 5:91–CV–271:* Papers 103, 115, 125, 138, 151, 154, 159, 164, and 165.

With respect to the remaining claims pending against Defendant PGNG, we rule as follows: Plaintiffs claims for breach of warranty, Counts XI in case number 5:91–CV–270 and IX in case number 5:91–CV–271, are DISMISSED. We further REMAND this matter to the Magistrate for further consideration of the judgmental immunity argument raised by PGNG in the following Motions for Summary Judgment:

*No. 89–CV–94:* 198 and 202;

*No. 5:91–CV–270:* 122, 176 and 180;

*No. 5:91–CV–271:* 162.

The Magistrate shall also accept additional motions with respect to Plaintiffs' claims of negligent misrepresentation against Defendant PGNG on the basis of the 1979 opinion letters.

2. AFFIRM the Magistrate's Order of March 31, 1995. WEC's Motion to Amend (paper # 188, 89–CV–94) is DENIED; and

3. DENY the Motions for Entry of Final Judgment filed by Village of Morrisville, et al. (paper # 218, 91–CV–270); Village of Ludlow, et. al. (paper # 220, 91–CV–270); Village of Stowe, et al. (paper # 228, 91–CV–270); and WEC, et al. (paper # 265, consolidated docket).

SO ORDERED.